MARY MOODY, Plaintiff in Error, *v.* THE PEOPLE, Defendants in Error.

ERROR TO RECORDER'S COURT, CHICAGO.

In an indictment for kidnapping, an affidavit for a continuance should show the particular fact or facts which can be proven by the absent witness, and in what way those facts are material.

In such a case, it is not necessary that physical force be used ; it will be sufficient to show that the mind was operated upon, by falsely exciting the fears, by the use of threats, or other undue influence, amounting substantially to a coercion of the will, as a substitute for violence.

In coming to a conclusion in such a case, the jury should take into consideration the condition of the person kidnapped, her age, education and condition of mind, and all the circumstances connected with the transaction, as detailed by the proof.

The judgment for costs is an incident of the judgment. Several defendants, when convicted, are severally liable for all the costs made by the people in the trial of their several causes, but not for such costs as are made to procure the conviction of a co-criminal in the same indictment.

THIS cause was heard before R. S. WILSON, Recorder, and a jury, at November term, 1857, of the Recorder's Court.

The facts of the case are fully stated in the opinion.

EDMUNDS & SKINNER, for Plaintiff in Error.

C. HAVEN, District Attorney, for The People.

WALKER, J. This was an indictment for kidnapping, in the Recorder's Court of Chicago, at the November term, 1857. The indictment contained two counts. The first count charges that Mary Moody, William Bush, Michael Joy and William H. Reed, on the 13th day of October, 1857, at the city of Chicago, etc., " unlawfully, fraudulently and wickedly, without having established a claim, according to the laws of the United States, forcibly did steal, take and arrest one Christiana Davis," etc., " a minor child of one Davis, of said county, city and State," " and her, the said Christiana Davis, did carry, transport and convey out of the State of Illinois into another State, to wit, into the State of Indiana, without the consent of the said Christiana Davis, and against her will, and without the consent of the said Davis, the father of the said Christiana Davis."

The second count alleges that Mary Moody, with the other defendants, on the same day and year, at the same place, " unlawfully, without having established a claim, according to the laws of the United States, forcibly did take and arrest one Christiana Davis, a free white minor child, and her, the said Christiana Davis, forcibly did carry out of the State of Illinois into another country, to wit, the province of Canada, without her consent, and against her will."

The defendant, Moody, filed her affidavit for a continuance, which is as follows :

" Mary Moody, one of the defendants in the above indictment, being duly sworn, doth depose and say that she has a good and substantial defense on the merits of this cause ; that —— Soper and —— Soper, his wife, of London, in the District of Canada

West, are material witnesses for this deponent on the trial of this cause, without whose testimony she cannot safely proceed to trial thereof; that she expects to prove by said Soper and wife (said witnesses) that this deponent is not guilty either of kidnapping, or aiding or assisting in the kidnapping, the said Christiana Davis, and by said indictment said to be kidnapped; that said Christiana Davis was aged about fourteen years in December, 1856; and the said Christiana Davis left the city of Chicago, county of Cook, and also the State of Illinois, and went through the State of Indiana and Michigan, to London aforesaid, of her own free will and accord, and that she was not taken or carried out of this State against her will, or without her consent, and that the said voluntary trip of said Christiana Davis is the same charged in said indictment, and supposed to constitute the crime of kidnapping; that she knows of no person by whom she can prove the same facts who are not indicted with her in this case, or the said Christiana Davis, who, on the examination before the committing court, denied the facts; that this indictment was found at this term of this court, since which time she has been unable to obtain the testimony of said witnesses, or their attendance in court; that the given names of said witnesses are unknown to deponent; that she expects to be able to obtain the testimony of said witnesses in this cause at the next term of this court. And this application is not made for delay, but that justice may be done."

The court overruled the motion, and the defendants were tried seven days after the indictment was found, by the court and a jury, which trial resulted in a verdict of guilty. This defendant entered a motion for a new trial, which was overruled by the court, and judgment was rendered on the verdict, to reverse which this defendant prosecutes this writ of error.

The first question which we propose to consider, is, whether the affidavit was sufficient to entitle the defendant to a continuance. When we divest it of its form, and look alone to its substance, we see that the affiant nowhere states a single fact which would tend in the slightest degree to establish her innocence. It only states that, by the absent witnesses, she can prove that she is not guilty, and that the prosecuting witness left the State voluntarily. Whether the witnesses, of their own knowledge, can so state, or, from information, can state material circumstances, is not stated. It is believed that, in our practice, the affidavit has always specifically stated the particular fact or facts which can be proven, and in what way they are material, and that, failing to do so, an affidavit was never held to be sufficient. Anything short of that degree of certainty would leave it to the affiant to determine what constitutes a defense,

and not to the court, as it certainly should. This affidavit was therefore insufficient.

It was likewise urged that the evidence against defendant Moody was insufficient to authorize the finding of the jury. After a careful examination of the evidence in the record, we are satisfied that it does show, beyond a reasonable doubt, that she aided and abetted the other defendants in the abduction, and, by so aiding, she became equally guilty of crime with the others, who were the active parties in its perpetration, and we see no reason for disturbing the verdict on that account.

The correctness of the second and third instructions given for the People is questioned by the assignment of errors; the second of which is, that " to constitute the forcible abduction or stealing of a person within the meaning of the statute, it is not necessary that virtual physical force or violence be used upon the person kidnapped. But it will be sufficient, if, to accomplish the removal, the mind of the person was operated upon by the defendants, by falsely exciting the fears, by threats, fraud or other unlawful or undue influence, amounting substantially to a coercion of the will, so that, if such means had not been resorted to or employed, it would have required force to effect the removal." The statute defines kidnapping to be the forcible abduction or stealing away of a man, woman or child from his or her own country, and sending or taking him or her into another. While the letter of the statute requires the employment of force to complete this crime, it will undoubtedly be admitted by all that physical force and violence is not necessary to its completion. Such a literal construction would render this statutory provision entirely useless. The crime is more frequently committed by threats and menaces than by the employment of actual physical force and violence. If the crime may be committed without actual violence, by menaces, it would seem that any threats, fraud, or appeal to the fears of the individual, which subjects the will of the person abducted, and places such person as fully under the control of the other, as if actual force were employed, would make the offense as complete as by the use of force and violence. And this is what this instruction asserts, and nothing more. We are fortified in this construction by the construction which has been given to the British statute defining the crime of rape. That statute requires, to make the crime complete, that the act shall be forcible, and against the will of the woman violated; and yet it has been held that when the woman was stupefied to insensibility by the use of drugs, and the act then committed, that it was a rape. *Rex* v. *Camplin*, 1 Car. & K. 746. Or when the offense was committed where the woman yielded her consent by fear of

death or duress. 1 Hawk. P. C., cap. 41. Or where a physician, by falsely pretending that the act done was necessary in a case of medical treatment. 1 Bishop's Crim. Law, 344; Wheat. Crim. Law, 442. We are not able to perceive any reason for distinguishing in the construction of these two statutes.

The third instruction on the part of the People was, that " in determining the guilt or innocence of the defendants in this indictment, the jury should take into consideration the condition of the girl, Christiana Davis—her age, education, and state of mind at the time, the representations and conduct of the several defendants towards her, the effect of those representations and that conduct upon her, the object of the defendants in effecting her removal from the State, and all the circumstances surrounding the case, as detailed in evidence." This instruction called the attention of the jury, very properly, we think, to the age and condition of the prosecuting witness, her intelligence, the representations of defendants to her, and their conduct and object in her removal, and left them, from these and all the other circumstances in the case, to determine the guilt or innocence of the defendants. We are unable to perceive any error in this instruction.

The only remaining question which we propose to consider, is, whether the court erred in rendering the judgment which it did, for the costs of the suit, against this defendant. In an indictment against two or more, it is generally true that the charge is several as well as joint; so that if one is found guilty, judgment may be rendered against him, although one or more may be acquitted. And where several persons are jointly indicted and convicted, they should be sentenced severally, and the imposition of a joint fine, is erroneous. The State v. Gay, 10 Miss. R. 440. It would therefore seem to follow, that as the judgment for costs is an incident following the judgment in the cause, it would be erroneous to render a joint judgment against all the defendants indicted, unless the trial resulted in a conviction that was joint. The defendants, when convicted, are severally liable for all the costs made by the People in procuring their several convictions; but not for the costs of each other, or for separate costs made by the People against their co-defendants. The judgment for costs, in this case, was against the defendant for all the costs of this proceeding. A proper construction of this judgment only authorizes the clerk, we think, to tax the People's costs made in her conviction, and not any separate costs made by the People in procuring the conviction of her co-defendants. The case is entitled, *The People* v. *Mary Moody, impleaded, etc.*, which

seems to indicate that the judgment was intended to be several and against her for only the costs for which she was legally liable, and we are of the opinion that such is the proper construction of the order. After having carefully examined this record, we do not feel disposed to disturb the judgment of the court below, and are of opinion that it should be affirmed.

*Judgment affirmed.*

BREESE, J. I do not concur in this opinion. The continuance should have been allowed on the affidavit, for it states, substantially, that the defendant could prove by the non-resident witnesses, that the girl went voluntarily to Canada. If such was the fact, and we are to take the affidavit as true, the jury could not have convicted. The trial took place immediately on finding the indictment, and the defendant should have had a reasonable time within which to prepare her defense. Speedy justice is desirable, but not such speed as deprives a party of all chance to make a defense.

Nor does there appear to me sufficient evidence to connect her with the real culprits by any overt act, or by advising the crime.