(No. 22828.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ALLAN SIEGAL *et al.* Plaintiffs in Error.

*Opinion filed December 19, 1935—Rehearing denied Feb. 19, 1936.*

DARROW, SMITH, CRONSON & SMITH, (WILLIAM W. SMITH, and EDWARD M. KEATING, of counsel,) for plaintiffs in error Allan Siegal and Arthur Sway; WM. SCOTT STEWART, for plaintiff in error Rudolph Pisani.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, HENRY E. SEYFARTH, and JOHN T. GALLAGHER, of counsel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

The defendants, Allan Siegal, Arthur Sway and Rudolph Pisani, were convicted in the criminal court of Cook county of kidnapping Harry Welch for ransom, and their imprisonment was fixed at twenty-five years in the penitentiary. They have sued out this writ of error to review the judgment.

Welch lived in Toledo, Ohio, and was in the clothing business. He had previously had some transactions with Siegal. In the spring of 1934, Siegal, through letters and telegrams, represented to Welch that he had on hand a supply of clothing for sale and urged Welch to come to Chicago to purchase it. On June 13 Welch came to Chicago pursuant to the request of Siegal and registered at the Morrison Hotel. Siegal called for him the next day and immediately after breakfast they went out to the West Side, in Chicago, where Siegal said he could show the merchandise to Welch. They drove to a building and entered a dark basement under a saloon. The basement was the home of a colored man and woman, who had been hired to vacate it for the time being. Sway and Pisani were concealed in the room. Both were armed. One of them had a machine gun. There was no clothing for sale in the premises. Welch was compelled to empty his pockets and take off his clothing. He was bound, gagged, subjected to vile epithets, roughly handled, and burned on the head and cheek with the metallic part of a hammer, which had been heated. Two thousand dollars was demanded of him. He said he could not raise that much money but would pay $500, and that he could get another $500 in Chicago. His counter-proposition was not accepted, and he was further tortured until he agreed to talk with his folks at home in an effort to obtain the sum demanded. He was taken up-stairs into the saloon, the doors of which were closed. There was a telephone, and he called his family at Toledo

and informed them that he was in need of $2000 immediately and requested them to wire it to the defendant Allan Siegal, who had previously given him a card upon which was written a description of Siegal and the place where the money should be sent. This card was as follows: "Allan Siegal—red hair—brown suit. 644 Diversey boulevard, apartment 219, Chicago, Illinois." One of the persons at Toledo who talked with Welch over the phone was his brother-in-law, Edward Rosenberg. He agreed to wire the money at once. After this conversation the defendants put Welch in an automobile and drove a number of blocks and through an alley to a garage located on the lot where Pisani's parents resided. It appears that the men went to a drug store, where they again called Toledo, after which they returned to the garage. Siegal and Sway then departed for 644 Diversey boulevard so as to be there when the telegraphic money order arrived. Welch was left in the garage in charge of Pisani, who was armed. Instead of sending the money as he had promised, Rosenberg called his attorney by phone in Toledo, who in turn called a lawyer in Chicago and related the circumstances to him. This attorney called the police department. Officers immediately went to the address Siegal had given and arrested him and Sway. In the meantime, Welch, who was confined in the garage, expressed a desire for some coffee. Pisani took him to a restaurant, where coffee was procured. They returned immediately to the garage to await the arrival of Siegal and Sway. After the lapse of considerable time Welch again expressed a desire for something to eat. Pisani took him to a large Thompson restaurant, where they sat at a table. The restaurant was conducted on a self-service plan. Welch went to the serving counter and ordered a piece of pie from a girl attendant. While she was serving it to him he said in a low tone, "Please call the police. I am being kidnapped." The girl thought he was joking and did not comply with his

request. A little later he again came to the counter to order a cup of coffee. The attendant said she noticed he was nervous and his hands were trembling. He again asked her to call the police, and told her if she did not do it he was going to break away and run. Seeing he was in distress she spoke to the manager, and the traffic officer at the corner was called in. He did not know for what purpose he was called, but as he entered Pisani saw him, arose, and left the building. He was not located and arrested for nearly a week. Welch told the policeman what had happened and he (Welch) was taken to the police station, where he made a full statement of all the occurrences.

Welch was lured and inveigled into coming from Toledo to Chicago where the defendants took forcible and unlawful custody of him. They assaulted and burned him in an attempt to extort money from him. None of these facts are denied. However, it is said that such facts do not constitute the crime of kidnapping but constitute the crime of an attempt to extort money and they should have been prosecuted under section 93a of the Criminal Code, (Ill. State Bar Stat. 1935, chap. 38, par. 216; Smith's Stat. 1935, chap. 38, par. 241;) which provides a penalty of not less than one nor more than twenty years in the penitentiary, instead of under the kidnapping statute, (Ill. State Bar Stat. 1935, chap. 38, par. 379; Smith's Stat. 1935, chap. 38, par. 386;) which provides a penalty of death or imprisonment for life or any term not less than five years. As we have stated, the evidence definitely established the fact that Welch was inveigled and decoyed into an unlawful confinement against his will for the purpose of extorting money from him. The facts of this case bring the offense within the terms of the provisions of the kidnapping statute.

Prior to the trial Siegal and Sway asked for a severance from Pisani because the latter had made a confession of guilt which involved them to their detriment. The court

heard the matter and denied the motion. Error has been assigned by those defendants. The names of Siegal and Sway appeared numerously in the so-called confession, and the court ordered their names deleted and the letter "x" inserted in each instance. The instrument was admitted in evidence, and while an assistant State's attorney was reading it to the jury he failed in one instance to say "x" where the name Siegal appeared, and in another he spoke the word "Sway" instead of "x." Immediate objections were made by the defendants, and the court said that it appeared the use of the names was inadvertent and instructed the jury to disregard it, and informed the jury that the statement was admissible only as to Pisani.

Where two or more persons have been indicted jointly and one of them has made a confession a severance will not be permitted as a matter of right, nor will the court be influenced because some of the defendants may prefer to be tried separately from the others. The People's rights in criminal prosecutions are to be observed as much as the defendants' rights. Both parties are clothed with certain privileges and presumptions and they must be duly regarded. It would be unjust and unreasonable to universally permit separate trials of persons who are jointly charged with a crime, and the better practice is not to permit it unless it shall appear from a showing made to the court that a denial of a severance would work prejudice to some one or more of the parties. No such showing was made in this behalf. In the first place, the instrument was not a confession. It was an exculpatory statement, in which Pisani attempted to excuse himself by saying that he was approached by one of the other defendants and asked if he did not want to make some money, to which Pisani replied, "Is it a hold-up?" The other defendant said it was not, but a man owed him some money which he wanted to make him pay. Pisani denied that he

had any other motive for his part in the crime. Neither of the other defendants took the stand, and it nowhere appears in the evidence that Welch ever owed any of the defendants anything. It is intimated that Siegal and Sway were thieves, engaged in stealing stocks of merchandise and disposing of them to dealers, among whom was Welch, and that Welch knew the character of the business in which the defendants were engaged. This may all be true, but if so it would constitute no defense to the crime. However, there is not a word of proof in the record to support that theory, except that the inference may be drawn from the contents of one of Welch's letters, which is by no means definite enough to justify the contention. More than that, the crime was amply proved without any reference to the statement, and we are of the belief that it was not prejudicial to the defendants even as affecting the length of the terms of their imprisonment, for they richly deserved the term fixed by the jury. There was not a salient fact in the People's case which was not abundantly established, including the production of doctors who testified to treating the burns on the victim shortly after they were inflicted. The crime of kidnapping is one of the most terrible and heinous known to the law. The threats against and terrorization of the victim not only occasion suffering to him upon whom they are inflicted, but they carry extreme distress to his family. The kidnapper and the extortionist are always lacking in mercy and kindness.

We regret to note the argument of counsel in this case was not conducted with the dignity and sense of obligation to the legal profession which should obtain in our proceedings. Particularly may this be said about the argument of the assistant prosecutor and of that of counsel for Pisani. This court has on numerous occasions, when the facts were not so well established as they are in this case, reversed judgments of conviction because of improper conduct of counsel, but here justice has been done, and we

will not disturb the verdict even though we cannot commend the conduct of some of the advocates in the case.

The judgment of the criminal court of Cook county is affirmed. *Judgment affirmed.*

Mr. JUSTICE SHAW, dissenting.