STATE OF MONTANA, Plaintiff and Respondent, v.
JERRY AL WALKER, Defendant and Appellant.

No. 10132.

Submitted March 10, 1961. Decided June 13, 1961.

362 P.2d 548.

Wm. A. Brolin, and Thomas C. Malee, Anaconda, for appellant. Wm. A. Brolin, Anaconda, argued orally.

Forrest H. Anderson, Atty. Gen., James M. Sorte, Asst. Atty. Gen., Malcolm MacCalman, County Atty., Deer Lodge, for respondent. James M. Sorte, Asst. Atty. Gen., and Malcolm MacCalman, County Atty., Deer Lodge, argued orally.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment of conviction, entered following a jury trial, of the crime of kidnapping with the intent to secretly confine.

The fact situation discloses that there was a riot at the Montana State Prison on April 16, 1959. One Erwin F.. Sieler was employed as a guard at the prison on that date and about

3:30 p. m. he relieved another guard for lunch period. In so doing he was located near a desk in what is known as the new wing. Shortly after he arrived there another guard named Marvin Wallace arrived and Wallace sat at the desk on the opposite side from Sieler. Sieler then noticed the defendant, Jerry Al Walker, who at the time had a knife with a blade about four or five inches long held in front of him and he spoke to Walker and stated: ''What is the matter here, put that knife down.'' Walker responded by stating it was a riot and asked for the keys. Sieler then noted that another convict named Maciel had arrived and was behind Wallace, who spoke up and said: ''It is no use in fooling — he has got me here by the throat.'' Wallace also advised Sieler to give them the keys and Sieler reached in his pocket and delivered the keys. Thereafter Sieler was told to go in the ''hole'' which is an isolation room. Guard Wallace in his testimony stated: ''We were marched to the stairway, that is to the door leading to the stairway that went down into the hole.''

After Sieler was in isolation for one and one-half to two hours he was removed and put in a cell and the door to the cell locked. Sometime later he was searched and moved to another cell. He was released about 4:00 o'clock in the morning on Saturday, April 18. During the period from the time he was placed in isolation until he was released on Saturday morning he had no communication with the outside world and was in custody or locked up at all times.

Warden Floyd E. Powell testified that he was in charge of Sieler and knew he was on duty in the prison on April 16, but his whereabouts in the prison was unknown to him and he was not able to communicate with him.

The defendant testified he worked in the prison laundry from 8:00 a. m. to 3:30 p. m., and when he got off work on April 16 he went to cell block No. 1. Between five and ten minutes later he noticed a disturbance and he talked with Jerry Myles who stated: ''I want you to take the guards that are at the

desk. This is going to be a riot." The defendant also testified that he then stood before the desk with Mike Maciel on the other side who had taken ahold of guard Wallace and that he told Sieler that this was a riot and there was a man on the catwalk with a rifle; that he did not think that Sieler should cause any trouble as he had a knife in his possession which he had obtained from Jerry Myles; that he asked for the keys and Sieler gave them to him and that he only went half way to isolation when somebody else stepped up to take Sieler and Wallace down. He also testified to certain threats made by other convicts toward him and stated that his actions were the result of such threats.

In brief, defendant contends (1) that the state failed to prove the force necessary to establish the crime; and (2) that he did not have the necessary intent because he was acting under duress or coercion because of threats made to him by other convicts participating in the affair.

As to the proof of force, in State v. Randall, 137 Mont. 534, 353 P.2d 1054, the information was identical to the one under which this defendant was charged, except for the difference in the name of the defendant, the facts were very similar. In that case we held that the State sustained the burden of proving the crime.

In State v. McDonald, 51 Mont. 3, 13, 149 P. 279, involving a kidnapping charge, wherein the question of absence of personal violence was raised, this court in its opinion stated:

"* * * By a show of force, short, it is true, of personal violence or physical seizure, except in Towey's case, the committee put under restraint the thirty-four men and held them under detention at its pleasure, the time covering the entire forenoon, in the case of Towey and his two companions, who were released and told to go about noon. Under the circumstances, the seizure was as complete and effective as if each one of the persons had been put in irons."

A threat made while in possession of a deadly weapon ac-

companied with the apparent power to carry out the threat, is most certainly the equivalent of force or actual violence. See People v. Knowles, 35 Cal.2d 175, 217 P.2d 1; People v. Brazil, 53 Cal.App.2d 596, 128 P.2d 204; People v. Hope, 257 N.Y. 147, 177 N.E. 402.

The matter is well-stated in the case of Moody v. People, 1858, 20 Ill. 315, 316, 318, where that court said:

"* * * if such means had not been resorted to or employed, it would have required force to effect the removal. The statute defines kidnapping to be forcible abduction or stealing away of a man, woman or child from his or her own country into another. *While the letter* of the statute requires the employment of force to complete this crime, it will undoubtedly be admitted by all that physical force and violence are not *necessary to its completion. Such a literal construction would render this statutory provision entirely useless.* The crime is more frequently committed by threats and menaces than by the employment of actual physical force and violence. If the crime may be committed without actual violence, by menaces, it would seem that any threats, fraud, or appeal to the fears of the individual, which subject the will of the person abducted, and places such person as fully under the control of the other, as if actual force were employed, would make the offense as complete as by the use of force and violence." Emphasis supplied.

In this case, defendant proposed an instruction which the court gave to the jury that read as follows:

"Force, when used in connection with the offense charged, must be either actual physical violence, or the threat, express or implied, of personal injury, accompanied by the power or means to carry the same into execution; *or threats, express or implied,* against the individual, which would cause the person against whom the threats were made, to be placed in fear of his personal well being." Emphasis supplied.

There can be little question then, that in view of defendant's own offered instruction, he conceded the law to be contrary

to the view he has now adopted in this court upon appeal. There is no merit in his contention that there must be a showing of actual physical violence or threat of personal injury to prove the force necessary to establish the crime.

As to the lack of intent because defendant asserts he was acting under duress or coercion by reason of threats made against him, it is apparent in the record that the only testimony in this regard arises from the self-serving statements of the defendant while a witness. The court properly instructed the jury with regard to this defense and it was a question for the jury to decide. It is apparent from their verdict that they did not believe coercion or duress existed.

We find no error in the trial before the district court and the judgment is therefore affirmed.

We call to the attention of the district court the fact that the transcript on appeal here, prepared at public expense, contains twenty-eight pages of jury argument, seventy-six pages of the voir dire examination of the jurors selected to try this case, and no error is predicated upon any part thereof. Since nearly one-third of the appellate record in this case is irrelevant, we note this situation, in view of our remarks in State v. Frodsham, 139 Mont. 222, 362 P.2d 413, that the district court may take such action as it deems appropriate.

MR. JUSTICES ADAIR, CASTLES and JOHN C. HARRISON concur.