STATE OF NORTH CAROLINA v. ROBERT LEE WOODY

No. 93

(Filed 20 January 1971)

1. Arrest and Bail § 3; Criminal Law § 84; Searches and Seizures § 1—
arrest without warrant — search incident to arrest

The arrest of defendant without a warrant for the armed robbery of an ABC store was lawful, where a clerk in the store told officers of the robbery just perpetrated, described the car in which the robber, a Negro, had fled with a white man, and gave officers the license number of the car, some seven or eight minutes after the robbery the officers observed a car fitting the description given and bearing the designated license number, with a white man and a Negro therein, and the officers approached the car and were told by the white man that defendant had robbed the store and had the money and a pistol on him; consequently, it was lawful for the officers, as an incident of the arrest, to search defendant then and there for weapons and for the fruits of the robbery. G.S. 15-41(2).

2. Criminal Law § 84—testimony concerning search of defendant — necessity for voir dire

In this armed robbery prosecution, the trial court did not err in failing to conduct a *voir dire* examination to determine the legality of

State v. Woody

defendant's arrest when defendant objected to testimony by the arresting officer as to what he found on the person of defendant where, at the time of defendant's objection to the solicitor's question concerning the result of the search, the testimony already received without objection showed a lawful arrest and a lawful search.

3. **Robbery § 4— armed robbery — sufficiency of evidence**

The trial court did not err in the denial of defendant's motion for judgment of nonsuit in this prosecution for robbery with firearms of an ABC store, the defendant's testimony that he was under the influence of alcohol and a tranquilizer pill not being considered in passing on the motion for nonsuit.

4. **Kidnapping § 1— elements of offense**

The offense of kidnapping consists of the unlawful taking and carrying away of a person by force and against his will.

5. **Kidnapping § 1— sufficiency of evidence**

The trial court did not err in the denial of defendant's motion for nonsuit on a charge of kidnapping, where the State's evidence tended to show that defendant, after robbing an ABC store, forced a bystander at gunpoint to drive him from the robbery scene to the point of defendant's arrest, defendant's testimony that the bystander went willingly, in response to defendant's offer to pay him for doing so, not being considered upon the motion for nonsuit.

6. **Kidnapping § 1— instructions — unlawfulness of taking and carrying away**

In this kidnapping prosecution, the trial court did not fail to instruct the jury that the taking and carrying away of the victim must be done unlawfully or without lawful authority.

7. **Kidnapping § 1— instructions — consent by victim**

In this kidnapping prosecution, the trial court did not fail to instruct the jury on the significance of defendant's contention that the alleged victim had consented, for a sum of money, to drive defendant from the scene of a robbery defendant had committed.

8. **Criminal Law § 6— instructions — defendant under influence of drugs**

In this prosecution for armed robbery and kidnapping, the trial court did not fail to instruct fully upon the defense that defendant was under the influence of drugs.

APPEAL by defendant from *Armtrong J.*, at the 22 June 1970 Criminal Session of FORSYTH, heard prior to determination by the Court of Appeals.

By indictments, proper in form, the defendant was charged with robbery with firearms and with kidnapping. He was found guilty as charged under each indictment. He was sentenced to imprisonment for a term of not less than 10 nor more than 15

years for the robbery and for a term of not less than 10 nor more than 30 years for the kidnapping, the latter sentence to commence at the termination of the former.

The evidence for the State was to the following effect:

At approximately 2 p.m. on 14 May 1970, the defendant entered Winston-Salem ABC store No. 3, in which there were then two clerks on duty and one customer. One of the clerks had known the defendant previously. After the departure of the customer, the defendant walked over to this clerk, pulled out a pistol, pointed it at the clerk's head and said, "Give it to me, Sammy," this being the name of the clerk's brother whom the clerk resembled. The clerk thereupon removed the drawer from the cash register and set it on the store counter. The defendant took the paper money from it, along with a package of silver half dollars and silver certificates which the clerk had separated from the other money. The other clerk having remarked that he did not believe the defendant meant "business," the defendant fired his pistol into the floor of the store and said to that clerk, "Pop, you'll be the next." He then walked over and removed all the paper money from that clerk's cash register drawer, putting into his pocket all the money taken from both clerks. The amount so taken from the cash registers was slightly more than $400.

A package containing silver coins and silver certificates, taken by the arresting officers from the defendant, was identified by the first clerk as the one taken from him and was introduced in evidence. The clerk likewise identified a .22 caliber pistol so taken by the officers as the one pointed at him by the defendant and it was offered in evidence.

While the defendant was in the act of removing the money from the second clerk's cash register drawer, Wesley C. Wooten entered the store to make a purchase, having his billfold in his hand. The defendant instructed Wooten to leave his billfold on the store counter, which Wooten did. Another customer then entered the store and, seeing what was in progress, went over to the wall.

After removing the money from the cash registers, the defendant told Wooten, "I'm not going to take your money." He then instructed one of the clerks to give him a bottle of whiskey

and also to give Wooten a bottle, saying Wooten was going to carry him away from there. The clerk so delivered the two bottles of whiskey, Wooten giving the clerk money for the bottle handed to him. The bottle so handed to the defendant was taken from him by the arresting officers and, after identification by the clerk was introduced in evidence.

Thereupon, Wooten and the defendant left the store, Wooten preceding the defendant. Wooten had never seen the defendant before. As he preceded the defendant out of the door, the defendant, having said to Wooten, "You are going to carry me where I want to go," stuck his pistol into Wooten's back, saying, "Let's go." Wooten turned away from the parking lot where his automobile was parked, but the defendant directed him back to it, again pushing the pistol into Wooten's back. Upon reaching Wooten's car, a brown and white 1958 Ford, they got in and drove away. The car choked down and the defendant pointed the pistol at Wooten, saying, "You had better get this thing rolling," which Wooten did. The defendant directed Wooten to drive to East Winston-Salem, but to no specific address therein. As they proceeded in a direction in which Wooten would not have gone but for the defendant's instruction and pistol, the defendant observed a woman on the sidewalk. He said she was his sister and directed Wooten to stop so he could give her some money. At this point, the clerks at the store having given the alarm in the meanwhile, two police cars came up. The officers directed Wooten and the defendant to get out of Wooten's car, which they did, some seven or eight minutes having elapsed since they left the store.

As Wooten's car left the parking lot, one of the clerks in the store wrote its license number upon a paper which he handed to the police officers upon their arrival at the store in response to the alarm. He also described the vehicle to the officers as a 1958 brown and white Ford, in which there were one white man and one Negro. The officers thereupon drove off in pursuit of the car and broadcast its description over the radio. When they observed a car fitting the description and bearing the designated license number, one white man and one Negro being therein, the officers approached it and directed the men (Wooten and the defendant) to get out, which they did. The officers immediately searched the defendant and took the pistol from his pocket, together with a quantity of paper money and the package con-

taining silver coins and silver certificates, and took the bottle of whiskey from the car. Prior to searching the defendant, the officers were also informed by Wooten that the defendant had robbed the store and had the money and the pistol on him. The pistol was loaded with four live rounds of ammunition and three empty shells.

The defendant was taken immediately to the police station and warrants charging him with robbery with firearms and with kidnapping were served upon him the same day.

Neither of the clerks in the store, nor the arresting officers, detected any odor of alcohol on the defendant's breath. His speech appeared normal. His actions were unhurried. One of the clerks noted that he seemed dazed, when he entered the store, so that the clerk's first reaction was to question whether any alcoholic beverage should be sold to him.

The defendant testified in his own behalf to the following effect:

On the day of the robbery he had had "something to drink" and had taken two pills called Cecco, which he said were tranquilizers. (There was no other evidence as to the nature of these pills.) He had been "on Ceccos" for five days preceding the robbery. On the occasion of the robbery, he "had mostly a happy mood and everything looked beautiful, and [he] felt that [he] was what you might say invulnerable; that [he] could do anything and just couldn't nothing happen to [him]."

Entering the store he walked up to the clerk, who was known to him, and said, "Fred, I want some money," pointing the pistol at the cash register and, when the clerk said, "That thing won't shoot," he demonstrated the clerk's error by shooting into the floor of the store. Thereupon, the clerk took the drawer out of the cash register and put it on the store counter. The other clerk then did the same with the drawer from his cash register. As the defendant was taking the bills out of the drawers, Mr. Wooten entered the store. He declined to take Wooten's money and requested Wooten to drive him across town. Upon Wooten's refusal he offered to pay Wooten to do so and Wooten said, "All right." They then left the store and drove away in Wooten's car. Passing his sister, as they drove along, he instructed Wooten to turn around and stop so that he might talk to his sister. Then seeing the police car coming behind them, he said, "Well, looks

like this is it." The officers came up and ordered him to get out of the car, which he did. The officer then reached in his pocket and got the money. The defendant then suggested to the officers that they divide it. Thereupon, the officers put handcuffs on him and put him in the police car. On the ride to the police station, the defendant remarked that it looked like he was a celebrity.

It was his intention to borrow some money from the clerk in the store.

The defendant finished the 12th grade in school, including schooling received while serving in the Army.

The defendant had previously been convicted of "strong-arm robbery," of carrying a concealed weapon and of discharging a firearm within the city. He denied that he was charged and convicted in 1968 of breaking and entering, asserting that he was charged rather with receiving stolen goods, saying, "I was buying a lot of hot stuff and selling it."

*Attorney General Morgan, Assistant Attorney General Costen and Assistant Attorney General Melvin for the State.*

*White, Crumpler and Pfefferkorn by Joe P. McCollum, Jr., for the defendant.*

LAKE, Justice.

**[2]** Relying upon *State v. Pike,* 273 N.C. 102, 159 S.E. 2d 334, the defendant assigns as error the failure of the trial judge to conduct a *voir dire* examination to determine the legality of the defendant's arrest when the defendant objected to the arresting officer's testifying as to what he found upon the defendant's person, no reason for such objection having been stated. This assignment of error is without merit.

**[1]** The question to which the objection was made was, "What did you find on his person?" Prior to this question, the officer had testified, without objection, that the clerk at the ABC store had told him of the robbery just perpetrated and that the robber had fled from the scene in a brown and white 1958 Ford with two occupants, one a white man and one a Negro, the car bearing a specified license number; that the car in which the defendant, a Negro, was riding with a white man met this description

and carried a license tag with the specified number; the officer approached this car and instructed the defendant to get out and put his hands on the top of the car, which the defendant did; and the officer then searched him. Previously, Mr. Wooten, the white man who was in the vehicle with the defendant, had testified, without objection, that this occurred seven or eight minutes after they left the ABC store, and that he told the officers the defendant had robbed the store and had the money and the pistol.

Under these circumstances, the arrest of the defendant without a warrant was clearly lawful. G.S. 15-41(2). Having every reason to believe that the defendant was an armed robber, fleeing from the scene of the crime just perpetrated, it was lawful for the officer, as an incident of the arrest, to search him then and there for weapons and for the fruits of the robbery. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed. 2d 889; *State v. Tippett,* 270 N.C. 588, 595, 155 S.E. 2d 269.

[2] At the time of the defendant's objection to the solicitor's question concerning the result of the search, the testimony already received, without objection, showed a lawful arrest and a lawful search. The defendant did not request an inquiry in the absence of the jury into these matters and did not suggest that he desired to offer testimony contradicting that of the State on these points. *State v. Pike, supra,* on the other hand, was a case in which there was no search of the defendant, but the officer was asked what items the defendant, himself, removed from his pocket in the presence of the officers. Upon objection, the jury was excused and, while the jury was out, the defendant requested the court to hear his testimony with reference to the admissibility of the self-incriminating evidence. This request was denied and the officer was thereupon permitted to testify, in the presence of the jury, concerning the items so removed by the defendant from his own pocket. The Pike case is clearly distinguishable from the present one.

[3-5] The assignment of error for the failure of the trial court to grant the defendant's motion for judgment of nonsuit in both cases is overruled. It would be difficult to imagine clearer evidence of robbery with firearms than that presented by the State in this case. Upon this motion, the defendant's testimony as to his being under the influence of alcohol and a tranquilizer pill would not be considered. On the motion of judgment of nonsuit, the evidence of the State must be taken to be true and interpreted

in the light most favorable to the State's contentions. The offense of kidnapping consists in the unlawful taking and carrying away of a person by force and against his will. *State v. Bruce,* 268 N.C. 174, 182, 150 S.E. 2d 216; *State v. Lowry* and *State v. Mallory,* 263 N.C. 536, 541, 139 S.E. 2d 870. The evidence of the State is ample to show the defendant so took Wooten and carried him from the scene of the robbery to the point of the defendant's arrest. The defendant's testimony that Wooten went willingly, in response to the defendant's offer to pay him for doing so, is not to be considered upon the motion for judgment of nonsuit.

[6]   The defendant's third assignment of error is that the judge, in instructing the jury as to the elements of the offense of kidnapping, did not state that the taking and carrying away of the victim must be done unlawfully or without lawful authority. In the present case, there was no evidence to suggest and no contention to the effect that the defendant took and carried Wooten away from the ABC store by lawful authority. Furthermore, the court expressly instructed the jury that it would return a verdict of not guilty if the State has failed to satisfy it from the evidence and beyond a reasonable doubt that the defendant *"unlawfully,* wilfully and feloniously, by the use of a pistol * * * forcibly and against his will took and carried Wooten away by making Wooten drive him from the ABC store * * * ." (Emphasis added.) Immediately prior to this statement, the court instructed the jury, "And kidnapping * * * means the *unlawful* taking and carrying away of a person by force against his will." (Emphasis added.) This assignment of error is overruled.

[7]   The fourth assignment of error is that the judge "failed to instruct on the significance of Mr. Wooten's consenting to driving the defendant." On the contrary, the court stated four times in its charge that to constitute the offense of kidnapping, the taking and carrying away of the alleged victim must be "against his will." In addition, the court, in reviewing the defendant's contentions, instructed the jury that the defendant contended that he did not kidnap Wooten, but Wooten agreed to drive the defendant for a sum of money. There is no merit in this assignment of error.

[8]   The fifth and last assignment of error is that the judge failed to instruct fully upon the defense that the defendant was under the influence of drugs. It is also without merit.

The sentences imposed upon the defendant for these offenses were severe, but neither exceeded the maximum permitted by the statute applicable to the offense in question. It was in the discretion of the trial judge to provide that they should run consecutively and not concurrently. With his exercise of this discretion, we are not authorized to interfere.

No error.