STATE OF NORTH CAROLINA v. BOBBY GENE MAYNOR

No. 90

(Filed 12 May 1971)

1. Homicide § 21; Kidnapping § 1— sufficiency of State's evidence

The State's evidence was sufficient for submission to the jury on issues of defendant's guilt of first degree murder and of kidnapping.

2. Criminal Law § 75— in-custody statements — admissibility

Testimony by a deputy sheriff as to statements made by defendant while in custody was properly admitted in evidence where there was plenary evidence on *voir dire* to support the court's findings that any statement made by defendant was made voluntarily and was not obtained in violation of defendant's constitutional rights.

APPEAL by defendant from *McKinnon, J.*, November 30, 1970 Session, CUMBERLAND Superior Court.

In separate indictments, defendant was charged, jointly with Nathan Owen Chance, (1) with the murder of Lawrence C. Burris, and (2) with kidnapping Lawrence C. Burris, on June 5, 1970.

The court determined defendant was an indigent within the meaning of G.S. 7A-450 and appointed Sol G. Cherry, Esq., Public Defender of the Twelfth Judicial District, to represent him.

On Saturday, June 6, 1970, the body of Lawrence C. Burris (Burris) was found in the Cape Fear River. The arms,

wrists and body had been tied up with hemp rope. The death of Burris was caused by drowning.

On Friday, June 5, 1970, about 10:00 p.m., Burris, accompanied by defendant, his codefendant, Nathan Owen Chance (Chance), and Betty Joyce Whitehead (Betty), aged 13, defendant's girl friend, left the Silver Dollar Bar in a green Chevrolet owned and operated by Burris. They rode around for about fifteen or twenty minutes and then stopped in a wooded area. Earlier that day defendant and Burris had been drinking together. When Burris stopped the car, Betty got out and went farther into the woods. While she was gone defendant and Chance assaulted and robbed Burris. When she returned, Burris was lying on the ground and defendant and Chance were kicking him. Defendant and Chance got rope from the trunk, tied Burris' hands, wrists and body, and put Burris in the trunk. Then defendant drove Burris' car to another wooded area near the Cape Fear River. They stopped there and opened the trunk. Burris got out, ran and fell down an embankment. Defendant and Chance chased and caught him. Each hit Burris over the head two or more times with a flashlight. Then they threw him into the river. When Burris was trying to get up out of the water, defendant put his foot on Burris' head "for a few minutes." Then Burris' body floated off. When defendant remarked to Chance "that he couldn't look at it any more," defendant and Chance returned to the car. Then defendant drove away in Burris' car, accompanied by Betty and by Chance.

The State's evidence included the testimony of Betty and of witnesses who testified (1) to defendant's subsequent statements that he had "beat" a man and "thrown" him into the river, and (2) to the sale by defendant of tools taken from the trunk of Burris' green Chevrolet. It also included testimony of Deputy Sheriff Washburn as to statements made to him by defendant. These statements are in substantial accord with Betty's testimony. However, Betty did not leave the car and go to the river bank. Washburn's testimony as to defendant's incriminating statements constitute the evidence as to precisely what happened when Burris was thrown into the river. In corroboration of his incriminating statements, defendant showed Washburn the wooded area where he and Chance had assaulted, robbed and tied Burris, and had put him in the trunk. Defendant also showed Washburn the place where the trunk was opened and he and Chance had chased Burris to the Cape Fear, assaulted

him and thrown him into the river. Articles found at these sites and also in Burris' green Chevrolet tended to corroborate defendant's incriminating statements.

In the murder case, the jury returned a verdict of guilty of murder in the first degree with a recommendation of life imprisonment; and the court pronounced judgment that defendant be imprisoned for life in the State's prison.

In the kidnapping case, the jury returned a verdict of guilty as charged; and the court pronounced judgment that defendant be imprisoned for life in the State's prison.

Defendant excepted to the judgments and gave notice of appeal. The Public Defender was appointed to represent him in connection with his appeal.

The only assignments of error are (1) that the court erred in the denial of defendant's motion(s) for judgment as in case of nonsuit, and (2) in failing to exclude the statements attributed to defendant by Deputy Sheriff Washburn.

*Attorney General Morgan and Deputy Attorney General Bullock for the State.*

*Sol G. Cherry, Public Defender, for defendant appellant.*

BOBBITT, Chief Justice.

[1]  As indicated by the evidential facts summarized in our preliminary statement, the State's evidence was amply sufficient to withstand defendant's motions for judgments as in case of nonsuit and to support the verdicts. There was evidence of all essential elements of first degree murder and of kidnapping.

On objection, a *voir dire* hearing was conducted to determine the admissibility of the testimony of Deputy Sheriff Washburn as to statements made by defendant while in custody. Washburn testified in detail, both on direct and cross-examination, as to the warnings given defendant concerning his constitutional rights and as to the circumstances under which defendant made the statements. Defendant did not testify or offer evidence.

[2]  On the uncontradicted evidence, the court found that, before he made any statement, Washburn warned defendant that

he had the right to remain silent; that any statement he made could be used against him; that he had the right to retain an attorney for advice; that counsel would be provided by the State if he was unable to employ counsel; that if he chose to make a statement he had the right to stop at any time; that defendant had signed "a waiver of rights," and indicated he understood his rights with reference to making a statement; and that any statement made by defendant was made voluntarily and was not obtained in violation of defendant's constitutional rights. Since there was plenary evidence to support the court's findings, Washburn's testimony as to defendant's statements was properly admitted for consideration by the jury.

Although we find no error in the admission of Washburn's testimony as to defendant's in-custody statements, it is noteworthy that there was plenary evidence to sustain the verdicts independent of the testimony concerning in-custody statements made by defendant.

In his brief, counsel for defendant states he has found "(n)o specific prejudicial error" in the record. Our consideration of the record indicates there was no error in the manner in which the trial was conducted. The grievous error was that of defendant who, for a pittance, assaulted, robbed, tied, imprisoned in the trunk, transported, and thereafter deliberately drowned, a man with whom he had been associating ostensibly as a friend.

The verdicts and judgments will not be disturbed.

No error.