STATE OF NORTH CAROLINA v. MARCELLUS MURPHY

No. 18

(Filed 15 December 1971)

**1. Kidnapping § 1— kidnapping by fraud — sufficiency of the evidence**

The issue of defendant's guilt of kidnapping a thirteen-year-old boy by fraud was properly submitted to the jury, where the State's evidence permitted legitimate inferences (1) that the boy, who was walking to a school basketball court, went instead into the woods with the defendant as a result of the defendant's false representation that there were squirrels in the woods, (2) that there were no squirrels in the woods, and (3) that the defendant made the false representation with intent to deceive the boy so that he could commit an assault upon him in the woods.

**2. Kidnapping § 1— kidnapping by fraud — elements of the offense**

The common law definition of kidnapping encompasses not only the unlawful taking and carrying away of a person by force but also the unlawful taking and carrying away of a person by false and fraudulent representations amounting substantially to a coercion of the will.

**3. Criminal Law § 104— motion for nonsuit — consideration of evidence**

On motion for nonsuit the evidence must be considered in the light most favorable to the State, and the State must be given the benefit of every reasonable intendment thereon and every reasonable inference to be drawn therefrom.

**4. Criminal Law § 104— motion for nonsuit — consideration of evidence — discrepancies and contradictions**

On motion for nonsuit only the evidence favorable to the State is considered, and contradictions and discrepancies, even in the State's evidence, are matters for the jury and do not warrant nonsuit.

**5. Criminal Law § 158— case on appeal — omission of the charge**

When the charge is not included in the case on appeal, it is presumed to be free from error.

Chief Justice BOBBITT dissenting.

DEFENDANT appeals from *Beal, S.J.*, 19 October 1970 Criminal Session, ROCKINGHAM Superior Court.

Defendant was tried upon two bills of indictment. One bill charged him with committing a felonious assault upon Steve Turner, a thirteen-year-old schoolboy. Defendant was convicted of this offense and sentenced to ten years in prison. He does not appeal this conviction and sentence.

The second bill charges that defendant "by the means of trickery, artifice and fraud, and by physical force did kidnap and carry away one Steve Turner, against the will of the said Steve Turner, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State." Defendant was convicted of this offense and sentenced to twenty-eight years in prison. He appeals from this conviction and sentence "strictly on the question of whether or not there was enough evidence to have the case submitted to the jury."

The State's evidence shows these facts: On 18 May 1970 Steve Turner was a student in the eighth grade at J. E. Holmes Junior High School in Eden. After school that day Steve went to play on the basketball court outside the Morehead High School which is located just across the street from his home and diagonally across the street from the school he attended. Steve had been shooting baskets alone for a few minutes when the defendant, Marcellus Murphy, approached. Steve threw the ball to him and he took a shot at the basket. Defendant then said he did not like that particular basketball court and said he wanted to go over to the Holmes School. While walking in the direction of the Holmes basketball court, they heard people playing basketball in the Morehead High School gymnasium and tried to enter there but found the doors locked. They then left the Morehead High School, crossed the parking lot, and intended to cross the street to the basketball court at the James E. Holmes Junior High School. At that time defendant said he would like to see some squirrels and knew where some were. Steve agreed to go look at the squirrels and defendant led the way. They walked approximately 150 feet down a path by a wooded area. There was a barbed wire fence with three strands of wire beside the path. Defendant stopped and went under the barbed wire fence. He then went down into the woods about 63 feet and was looking in the air "like he was seeing some squirrels." That particular area was covered with saplings, bushes, and large trees. De-

---

State v. Murphy

---

fendant "acted like he was seeing them jumping from tree to tree" while looking up into the trees. What then occurred is described in Steve's own words as follows:

"As he was looking up in the trees he said 'come here' and I came along. I went under the fence and then he took me by the shoulders and kind of got me in the direction of where to look and I looked up. When he got me by the shoulders he was guiding me where to look, and I looked .... I did not see anything like a squirrel. All I saw was tall trees. He was right behind me all the time. While I was looking up at the trees, he put his hands over my nose and mouth and held me until I passed out, and he told me not to scream or he would beat me worse, and he told me he was going to kill me. I tried to pull his hands off of my mouth at first and then I gave up and passed out.

"When I regained consciousness I was lying on the ground and he had his heels stomping me in the head. He had the heel of my shoe, his shoes were real hard and he was stomping me in the head with it and it hurt and knocked me out again. He stomped me about five times before it knocked me out. I lost consciousness again. The next time I woke up he hit me with something that felt like a bat. It was not his fist. It was real hard, like a rock, and he hit me in the back of the head. Later I found a wound in the back of my head and I had stitches back there. I believe there were eighteen (18) stitches. The best that I can say is that something hard hit me.

"At the time that I was hit I was kind of up on one arm with the rest of my body on the ground. I could not see him because my eyes were swollen shut and I could not see at all. My eyes were swollen because they had been beaten real bad. When I first passed out it was from being smothered. When I woke up I could hardly see anything because my eyes were swollen shut and felt so beat up. I don't know what was going on really when I regained consciousness but I knew that I was being beaten real bad.

"After I lost consciousness the second time I was on the ground when I regained consciousness. I did not know that I was burned but that was the next time that I woke up, and I walked out toward the road. I do not remember going back through the fence. When I regained conscious-

ness the third time, I was laying on the ground in about the same area as before but the defendant was not there. I have since learned that I was burned. I tried to get out to the road and I made it somehow and I got out to the road and somebody picked me up but I do not know who they were. I realized that I was being picked up and I had a string around my arm and was begging them to cut it off but they did not have anything to cut it off with.

" . . . I had not been burned or injured in any way before I went into the woods with the defendant. When I came out of the woods and while I was in the woods I did not see anyone else. While I was in the woods I was just beaten and burned but I didn't know that I was burned. I was burned down my sides and my arms, on my back and my sides and my hips and my arms and my face. . . . I was in the emergency room at the hospital for five hours and I was taken to Chapel Hill early the next morning to the North Carolina Memorial Hospital. I stayed there for sixty-five days. Since that time I have been back to the hospital a number of times for treatment. I am going to undergo another operation for plastic surgery."

Defendant's motion for judgment of nonsuit, interposed at the close of the State's evidence and renewed at the close of all the evidence, was denied. The jury convicted defendant of kidnapping as charged in the bill of indictment, and from judgment pronounced thereon he appealed to the Court of Appeals. The case was transferred to the Supreme Court for initial appellate review under our general order dated 31 July 1970.

*Bethea, Robinson and Moore by Norwood E. Robinson, Attorney for defendant appellant.*

*Robert Morgan, Attorney General; William W. Melvin and T. Buie Costen, Assistant Attorneys General, for the State of North Carolina.*

HUSKINS, Justice.

[1] Defendant's sole assignment of error is based on denial of his motion for judgment of nonsuit. He contends that the evidence, taken as true and considered in the light most favorable to the State, fails to make out a case of kidnapping. We now examine the validity of this contention.

G.S. 14-39 provides in pertinent part: "It shall be unlawful for any person . . . to kidnap . . . any human being. . . . Any person . . . violating . . . any provisions of this section shall be guilty of a felony, and upon conviction therefor, shall be punishable by imprisonment for life." Since this statute does not define kidnapping, the common law definition of that crime is the law of this State. G.S. 4-1. The common law definition of kidnapping is "the unlawful taking and carrying away of a person by force and against his will." *State v. Lowry*, 263 N.C. 536, 139 S.E. 2d 870 (1965). *Any* carrying away is sufficient. "The distance the victim is carried is immaterial." *State v. Ingland*, 278 N.C. 42, 178 S.E. 2d 577 (1971) ; *State v. Lowry, supra.*

[2]  Under the pristine law of kidnapping, actual physical force was contemplated to accomplish the crime—fraud was not considered. However, in the last century this and other courts have progressively recognized that one's will may be coerced as effectually by fraud as by force. Accordingly, this Court has interpreted the common law definition of kidnapping to encompass not only the unlawful taking and carrying away of a person by force but also the unlawful taking and carrying away of a person by false and fraudulent representations amounting substantially to a coercion of the will. In *State v. Harrison*, 145 N.C. 408, 59 S.E. 867 (1907), the Court approved the trial judge's instruction that, "By kidnapping is meant the taking and carrying away of a person, forcibly or fraudulently." Thus fraud has become synonymous with force in the common law definition of kidnapping, and the equation of fraud with force has been accepted in the legal encyclopedias and approved in numerous jurisdictions. *Kent v. Commonwealth*, 165 Va. 840, 183 S.E. 177 (1936) ; *People v. Siegal*, 362 Ill. 389, 200 N.E. 72 (1935) ; *People v. DeLeon*, 109 N.Y. 226, 16 N.E. 46 (1888) ; *United States v. McGrady* (C.A. 7, Ind. 1951), 191 F. 2d 829, cert. den., 342 U.S. 911, 96 L. Ed. 681, 72 S.Ct. 305 (1952) ; *State v. Brown*, 181 Kan. 375, 312 P. 2d 832 (1957) ; *Moody v. People*, 20 Ill. 315 (1858) ; *White v. State*, 244 Ind. 199, 191 N.E. 2d 486 (1963) ; *Sutton v. State*, 122 Ga. 158, 50 S.E. 60 (1905) ; *State v. Walker*, 139 Mont. 276, 362 P. 2d 548 (1961) ; *State v. Witherington*, 226 N.C. 211, 37 S.E. 2d 497 (1946). *See* 1 Am. Jur. 2d, Abduction and Kidnapping, § 13; Annot., Kidnapping by fraud or false pretenses, 95 A.L.R. 2d 450.

The principle involved in kidnapping by fraud is fully and clearly expressed in the following quotation from 24 Cyc., 798,

799, contained in *State v. Gough,* 257 N.C. 348, 126 S.E. 2d 118 (1962):

> "To constitute the offense of kidnapping it is not necessary that actual physical force or violence should have been employed, and this was true even at common law. It is essential only that the taking or detention should be against the will of the person kidnapped. Falsely exciting the fears of the person who is the subject of the offense by threats, or enticement or inveiglement by false and fraudulent representations amounting substantially to a coercion of the will is sufficient. In determining whether the person was coerced by fraud and inveiglement, the nature of the artifice employed and the age, education, and condition of mind must be taken into consideration. The offense is not committed if the person taken away or detained, being capable in law of consenting, goes voluntarily without objection in the absence of fraud and deception. But a child of tender years is regarded as incapable of consenting."

*Gough* stands for the proposition that where false and fraudulent representations amounting substantially to a coercion of the will of the victim are used in lieu of force in effecting kidnapping, there is in law no consent at all on the part of the victim. Under those circumstances the law considers fraud the equivalent of force.

[1] In the present case no actual force was used by defendant. Steve Turner voluntarily accompanied him, ostensibly for a lawful and innocent purpose—to go look at some squirrels. But the State's evidence permits, almost compels, these legitimate inferences: (1) When defendant and Steve left Morehead High School and crossed the parking lot, Steve intended to cross the street and go to the basketball court at the James E. Holmes School; (2) meanwhile, defendant had decided to make the sadistic attack upon Steve and suggested looking at squirrels to entice Steve into the woods; (3) there were no squirrels in the woods; (4) Steve would not have gone into the woods at all except for defendant's false representations that squirrels were there and his deceptive, fraudulent conduct in "looking in the air like he was seeing some squirrels" and acting "like he was seeing them jumping from tree to tree"; (5) defendant's representations concerning squirrels were untrue and defendant knew they were untrue when he made them; (6) such false

representations were reasonably calculated to deceive Steve Turner, considering his age and education and the nature of the representations (what thirteen-year-old boy does not possess a tremendous interest in small wild creatures?) ; (7) defendant made these false representations with intent to deceive Steve and thereby inveigle him into the woods so he could commit the assault upon him; (8) defendant did in fact deceive Steve and cause him to leave the parking lot and go into the woods where the sadistic assault took place; and (9) Steve's apparent consent to journey into the woods, having been obtained by the fraud of the defendant, was in truth no consent at all but simply the fruit of defendant's fraud amounting substantially to a coercion of the victim's will.

[3, 4] On motion for nonsuit the evidence must be considered in the light most favorable to the State, and the State must be given the benefit of every reasonable intendment thereon and every reasonable inference to be drawn therefrom. *State v. Cook,* 273 N.C. 377, 160 S.E. 2d 49 (1968) ; *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679 (1967). Only the evidence favorable to the State is considered, *State v. Gay,* 251 N.C. 78, 110 S.E. 2d 458 (1959), and contradictions and discrepancies, even in the State's evidence, are matters for the jury and do not warrant nonsuit. *State v. Mabry,* 269 N.C. 293, 152 S.E. 2d 112 (1967). When the evidence in this case is so considered, giving the State the benefit of every reasonable inference to be drawn therefrom, it was sufficient to carry the case to the jury on the kidnapping charge contained in the bill of indictment. Defendant's motion for judgment of nonsuit at the close of all the evidence was properly denied.

[5] The charge is not included in the case on appeal. "It is, therefore, presumed to be free from error and that the jury was properly instructed as to the law arising upon the evidence as required by G.S. 1-180." *State v. Staten,* 271 N.C. 600, 157 S.E. 2d 225 (1967).

The verdict and judgment of the court below will be upheld.

Affirmed.

Chief Justice BOBBITT dissenting.

The gruesome manner in which defendant assaulted, tortured and seriously injured Steve Turner is graphicly described

in the portion of Steve's testimony quoted in the Court's opinion. For this unprovoked and brutal attack defendant was indicted and convicted of felonious assault and sentenced to the maximum term of ten years. He does not appeal from his conviction and sentence for felonious assault.

Defendant was also tried and convicted of kidnapping and sentenced to serve 28 years, the sentences to run concurrently. His appeal is from this conviction and sentence; and the sole question is whether the evidence is sufficient to warrant submission of the kidnapping case to the jury.

The indictment for kidnapping charges that defendant "unlawfully, wilfully, feloniously, without lawful authority, by the means of trickery, artifice and fraud, and by physical force did kidnap and carry away one Steve Turner, against the will of the said Steve Turner," etc.

There was no evidence of the actual or threatened use of physical force prior to defendant's surprise assault on Steve.

Our statute, G.S. 14-39, does not define *kidnapping* but prescribes the punishment therefor. Kidnapping, as used in G.S. 14-39, is generally defined in our decisions as the unlawful taking and carrying away of a human being against his will by force or fraud. *State v. Ingland,* 278 N.C. 42, 50, 178 S.E. 2d 577, 582 (1971), and cases there cited. As interpreted in our decisions, this statute leaves the term of imprisonment for kidnapping in the discretion of the court, imprisonment for life being the maximum punishment. *State v. Kelly,* 206 N.C. 660, 663, 175 S.E. 294, 296 (1934); *State v. Barbour,* 278 N.C. 449, 457-58, 180 S.E. 2d 115, 120-21 (1971).

G.S. 14-39 draws no distinction in respect of the permissible punishment for kidnapping on account of such factors as (1) the duration of the victim's unlawful detention, (2) the distance the victim is unlawfully taken and carried away, (3) whether the victim's life is endangered or threatened while unlawfully taken, carried away or detained, and (4) whether the victim is physically or otherwise injured prior to release, escape or rescue.

Implicit in our general definition of kidnapping are these essentials, (1) an unlawful carrying away of the victim, and (2) an unlawful deprivation of the victim's liberty by force or intimidation. These essentials occur simultaneously when the

victim is deprived of his liberty by force or intimidation and is immediately carried away. Fraud may take the place of force in initiating a kidnapping. Thus, a person may be induced by fraudulent representations to go to a destination where the kidnapper changes from apparent friend to malefactor and there deprives him of his liberty by force or intimidation.

In prior decisions involving a conviction for kidnapping, other than *State v. Smith,* 210 N.C. 63, 185 S.E. 460 (1936), and *State v. Knight,* 248 N.C. 384, 103 S.E. 2d 452 (1958), there was plenary evidence of the victim's unlawful confinement or imprisonment by force or intimidation. *State v. Harrison,* 145 N.C. 408, 59 S.E. 867 (1907) ; *State v. Kelly, supra; State v. Witherington,* 226 N.C. 211, 37 S.E. 2d 497 (1946) ; *State v. Streeton,* 231 N.C. 301, 56 S.E. 2d 649 (1949) ; *State v. Dorsett,* 245 N.C. 47, 95 S.E. 2d 90 (1956) ; *State v. Gough,* 257 N.C. 348, 126 S.E. 2d 118, 95 A.L.R. 2d 441 (1962) ; *State v. Lowry,* 263 N.C. 536, 139 S.E. 2d 870 (1965) ; *State v. Bruce,* 268 N.C. 174, 150 S.E. 2d 216 (1966) ; *State v. Turner,* 268 N.C. 225, 150 S.E. 2d 406 (1966) ; *State v. Arsad,* 269 N.C. 184, 152 S.E. 2d 99 (1967) ; *State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481 (1969) ; *State v. Perry,* 275 N.C. 565, 169 S.E. 2d 839 (1969) ; *State v. Woody,* 277 N.C. 646, 178 S.E. 2d 407 (1971) ; *State v. Penley,* 277 N.C. 704, 178 S.E. 2d 490 (1971) ; *State v. Ingland, supra; State v. Barbour, supra; State v. Maynor,* 278 N.C. 697, 180 S.E. 2d 856 (1971) ; *State v. High,* 279 N.C. 487, 183 S.E. 2d 633 (1971). In *State v. Smith, supra,* and *State v. Knight, supra,* this Court held that there was insufficient evidence to constitute kidnapping.

Although not referred to in the majority opinion, I am aware that the opinion in *State v. Gough, supra,* contains the following statement: "In the present case there was no actual confinement or detention of Elaine Saunders, nor any actual force used by defendant." *Id.* at 357, 126 S.E. 2d at 124, 95 A.L.R. 2d at 448. In my opinion the facts in evidence did not justify this statement. According to the State's evidence, Gough, the defendant, went to the Saunders home about 9:00 p.m. Elaine, aged 15, and her younger sister, left with the defendant in the defendant's car. They did so because of the defendant's false and fraudulent representations that he wanted Elaine in his home as a babysitter, to enable the defendant and his wife to go out. After various stops and changes of direction, the defendant turned off onto a dirt road, slowed the car, told the

girls he was not "Dr. Watson," as he had told them and their parents, but was "Frank Jackson," and "if [they] would be nice to him and cooperate with him [they] wouldn't get hurt and he would pay [them] nice." *Id.* at 350, 126 S.E. 2d at 120, 95 A.L.R. 2d at 444. Elaine and her sister jumped out of the slowly moving car and ran back up the dirt road about a mile and aroused the occupants of a house. Although I concurred in the decision that the evidence was sufficient to support the verdict, I was of opinion that these girls from the time they became aware of the defendant's sinister purpose were substantially confined and imprisoned by the defendant while he had them in his car during travels over unknown ways in the nighttime. While a borderline case of kidnapping, I thought the evidence as to unlawful confinement or imprisonment was sufficient notwithstanding neither of the girls was physically harmed.

In *State v. Ingland, supra,* it was held that unlawful restraint or imprisonment *alone* did not constitute kidnapping, but that the asportation or carrying away of the victim was also an essential element of the crime. In *Ingland,* there was ample evidence of the victim's unlawful restraint or imprisonment. Conversely, in the present case, there is ample evidence of the asportation or carrying away of the victim, namely, that Steve was induced to go into the woods by defendant's fraudulent representations. Unlike *Ingland,* the crucial question here is whether there is evidence sufficient to support a finding that Steve was deprived of his liberty by force or intimidation. In my opinion, the answer is, "No."

All agree that defendant's conduct was despicable. Perhaps imprisonment for ten years under the judgment in the felonious assault case or such portion as he may serve is not sufficient punishment for conduct that may have caused Steve's death and certainly inflicted injury of a serious and probably a permanent nature. However, *the legal question* is whether defendant is guilty of the independent crime of kidnapping. Can a distinction be drawn between defendant's guilt under present circumstances and his guilt if he came upon Steve by chance in the woods and assaulted him in the same manner? Conversely, would he be guilty of kidnapping and subject to the possibility of a life sentence if instead of committing a cruel and barbarous assault he had committed a simple assault by slapping Steve, without injuring him?

In my opinion, the unlawful restraint or imprisonment necessary to constitute the unlawful deprivation of liberty essential to the crime of kidnapping involves more than a surprise attack. It involves the actual loss of liberty for a significant period under circumstances sufficient to cause the victim to be conscious of such restraint or imprisonment and to be apprehensive of injury on account thereof. Although Steve was brutally assaulted and tortured, in my opinion there is no evidence sufficient to support a finding that he was unlawfully restrained or imprisoned and deprived of his liberty within the meaning of this essential of the crime of kidnapping. Therefore, although mindful of the depraved conduct of defendant, I vote to reverse the verdict and judgment in the kidnapping case.