STATE OF NORTH CAROLINA v. FRANK JACKSON GOUGH.

(Filed 15 June 1962.)

**1. Kidnapping § 1—**

The word "kidnap" as used in G.S. 14-39 means the unlawful taking and carrying away of a person by force or fraud and against his will, or the unlawful seizure and detention of a person by force or fraud and against his will, and therefore the contention that the statute, since it repeals C.S. 4221, and omits the word "fraud" or "fraudulently," or words of similar import, does not embrace an unlawful detention or carrying away of a person against his will by fraud, is untenable.

**2. Same—**

Evidence that defendant induced a young girl to go with him in his car by means of false representations that he wished her to baby-sit with his two children, and that such representations were made by defendant falsely, knowingly, and with intent to deceive the young girl so he could carry her off in his automobile for some immoral purpose, *is held* sufficient to be submitted to the jury in this prosecution for violation of G.S. 14-39, since her consent, having been obtained by false representations and fraud, was no consent in law, so that the asportation was in fact against her will.

**3. Same—**

Where, in a prosecution under G.S. 14-39, the evidence tends to show that defendant kidnapped prosecutrix by fraud, but there is no evidence that he used threatening words or violence or any overt act or an attempt, with force and violence, to do injury to prosecutrix, there is no evidence of assault upon a female, and therefore the court correctly refrains from submitting the question of defendant's guilt of assault upon a female, and correctly confines the jury to a verdict of guilty or not guilty of the offense charged.

BOBBITT, J., concurs in result.

HIGGINS, and RODMAN, JJ., dissent.

---

---

APPEAL by defendant from *Armstrong, J.,* 9 October 1961 Term of FORSYTH.

Prosecution for kidnapping.

The indictment charges that the defendant on 22 July 1961 "unlawfully, willfully, feloniously and fraudulently did kidnap Elaine Saunders, a human being."

Plea: Not Guilty. Verdict: Guilty as charged.

From a judgment of imprisonment, defendant appeals.

*Attorney General T. W. Bruton and Assistant Attorney General Ralph Moody for the State.*

*Robert M. Bryant and Deal, Hutchins & Minor by Roy L. Deal for defendant appellant.*

PARKER, J. The State's evidence shows these facts:

In the spring of 1961 Elaine Saunders, a fifteen-year-old high school student, was living with her parents in Winston-Salem. When her school was ending, in an endeavor to obtain employment during the summer, she put an advertisement in the student ad page of the morning and afternoon papers for a baby-sitting job. It ran two or three weeks.

About 7:30 p. m. o'clock on 22 July 1961, Saturday, defendant called Elaine Saunders by telephone. He told her he had seen her advertisement in the paper, and wanted her to baby-sit with his two children, because his mother had a sprained ankle and couldn't get around. He said he was some kind of doctor, and wanted her to get a cab and come to the Professional Building where he was. She replied he would have to talk to her mother. He said he would call back in five or ten minutes. In a short time he telephoned again, and told Margaret Saunders, Elaine's mother, he was Dr. Watson, and wanted Elaine to baby-sit with his two girls, his mother had a sprained ankle, and he and his wife were going out. He further said he had some work to do at the office, and it would save time if Elaine came in a taxi to the Professional Building. She replied she would have to see him before she permitted her daughter to go out. He replied he would come to the home, and asked directions to get there.

About 9:00 p. m. o'clock on the same night he came to Elaine's home driving a 1960 beige colored Dodge. Elaine, her parents, her younger sister, and her uncle and aunt were there. He said he was going somewhere about Ardmore, he had wanted Elaine to stay until eleven o'clock at night, but since it was so late he wanted her to stay until midnight, and he asked her mother if it was all right. The mother

replied, Yes, and asked him would it be all right for Elaine's younger sister to go along. He answered, Yes.

Elaine and her sister got in the automobile with defendant. He drove to a drug store, went in, and came back with a package. He then drove to 2015 Elizabeth Avenue in Winston-Salem where he said he lived. He said he was tired of wearing a white shirt and tie, which doctors had to wear, and wanted to put on a red shirt. He left Elaine and her sister in his automobile, went into the house, and a few minutes later came out wearing a red shirt. When he drove off, he said he was going to Clemmons, North Carolina, where his mother and children were. He drove out on the East-West Expressway a considerable distance and turned off on a dirt road. He passed several houses on the dirt road, slowed his automobile down, and said to Elaine and her sister "if we would be nice to him and co-operate with him we wouldn't get hurt, and he would pay us nice." Whereupon, Elaine and her sister jumped out of his automobile, and ran back up this dirt road about a mile to a house occupied by Mr. and Mrs. John Sparks in Davie County near Farmington. Sparks and his wife were asleep, and were awakened by these two girls knocking and saying, "Please help us." Sparks and his wife turned on the porch light and went out. The girls were hysterical—just scared to death; their legs were fairly muddy up to the knees. They told Mr. and Mrs. Sparks what had happened, and said, "Please take us to where mama is." While they were on the porch an automobile passed several times, and the girls yelled, "That is him," and looked like they wanted to run over Sparks and his wife to get in the house. Officers of Davie County brought the girls to Forsyth County. The Sparkses' home is about ten miles from Clemmons, North Carolina, and about eight miles from Elaine Saunders' home in Forsyth County.

Later that night defendant was arrested in an apartment at 2015 Elizabeth Avenue in Winston-Salem, which had on the door the name Frank Gough, and placed in the Forsyth County Jail, where he was identified by Elaine Saunders, her sister, and her mother. Defendant told the arresting officer he knew nothing about these two girls, saying, "I have been home all afternoon and all evening." In front of the apartment, when defendant was arrested, was a beige colored 1960 Dodge automobile registered in the name of Frank and Carol Gough.

Defendant's evidence shows: He works at Western Electric, where he is classified as a gyro-technician. On 22 July 1961 his wife was away from home. He was taking Elaine Saunders and her sister to his mother's house in Davie County. On the way he planned to go by his sister's house, and got on the wrong road. He slowed his automobile down, and was turning around, saying, "I am on the wrong road," when

STATE v. GOUGH.

all of a sudden the two girls jumped out and ran. He could tell they were frightened. He testified: "I couldn't figure out why they were frightened."

Defendant assigns as error the denial of his motion for judgment of compulsory nonsuit made at the close of all the evidence. G.S. 15-173.

Our present kidnapping statute, G.S. 14-39, which was enacted by the General Assembly at its 1933 Session as a result of the Lindbergh tragedy, reads in pertinent part:

> "It shall be unlawful for any person, firm or corporation, or any individual, male or female, or its or their agents, to kidnap or cause to be kidnapped any human being, or to demand a ransom of any person, firm or corporation, male or female, to be paid on account of kidnapping, or to hold any human being for ransom: Provided, however, that this section shall not apply to a father or mother for taking into their custody their own child."

This statute repeals C.S. 4221, *S. v. Kelly*, 206 N.C. 660, 175 S.E. 294, which was enacted by the General Assembly at its 1901 Session, and reads as follows:

> "If any person shall forcibly or fraudulently kidnap any person, he shall be guilty of a felony * * *."

Defendant's counsel contend our 1933 Act, different from our 1901 Act, applies only to a forcible taking, because the word fraud, or fraudulently, or words of like import, were omitted from the 1933 Act, and that he cannot be guilty under our present Act of kidnapping, because the evidence fails to show that any force was used by defendant in taking Elaine Saunders away with him.

In *S. v. Witherington*, 226 N.C. 211, 37 S.E. 2d 497, the Court said in reference to G.S. 14-39:

> "The word 'kidnap,' as defined by Webster, means: 'To carry (anyone) away by unlawful force or by fraud, and against his will, or to seize and detain him for the purpose of so carrying him away.' Moreover, in American Jurisprudence, the author, in treating of the subject, states that 'the generally accepted basic element of the crime of kidnapping is the taking or detaining of a person against his will and without any lawful authority.' 31 Amer. Jur., 815. And in the *S. v. Harrison* case, *supra*, the court instructed the jury that 'by kidnapping is meant the taking and carrying away of a person forcibly or fraudulently.' However, reference to the record on appeal in that case discloses that the

instruction as given was not the subject of an exception.

"In the light of these definitions, we are of opinion that a finding that defendant 'did forcibly take and carry away' the person of Mary Simmons, without more, is insufficient to constitute the crime of kidnapping with which he is charged. The word 'forcibly' as so used means 'effected by force used against opposition or resistance,' or 'obtained by compulsion or violence,' that is, physical force. However, 'a taking and carrying away' effected or obtained by fraud would constitute an element of the offense as completely as if effected or obtained by force. But regardless of the means used, by which the taking and carrying away is effected, there must be further finding that the taking and carrying away was unlawful or done without lawful authority, or effected by fraud."

In *S. v. Dorsett*, 245 N.C. 47, 95 S.E. 2d 90, the Court repeated Webster's definition of kidnapping, and referred to the *Witherington* case.

Defendant contends that the statement in the *Witherington* case in respect to our present kidnapping statute: "However, 'a taking and carrying away' effected or obtained by fraud would constitute an element of the offense as completely as if effected or obtained by force" is merely an *obiter dictum*, and what is more an erroneous *obiter dictum*. Defendant further contends that the Court's use of Webster's definition of kidnapping in the *Witherington* and *Dorsett* cases is not sound, because the statutes of different states vary, and some do include a fraudulent kidnapping and some not.

The common law definition of kidnapping has been somewhat differently stated by the early legal writers. Blackstone, Commentaries, Book 4, p. 219, defines kidnapping: "Being the forcible abduction or stealing away of a man, woman, or child from their own country and sending them into another." 1 East, Pleas of the Crown, 429, 430, says: "The most aggravated species of false imprisonment is the stealing and carrying away, or secreting of any person, sometimes called kidnapping, which is an offense at common law, punishable by fine, imprisonment and pillory." Hawkin's Pleas of the Crown, John Curwood, 8th Ed., Vol. I, p. 119, states: "But an aggravated species of false imprisonment is the privately carrying off any person, and keeping them secretly confined, which is generally understood by the term *kidnapping*." Bishop, Criminal Law, 9th Ed., Vol. 2, sec. 750, 2, page 573, states the better view as to the definition of kidnapping is that "kidnapping is a false imprisonment aggravated by conveying the imprisoned person to some other place." Bishop, *ibid*, sec. 751, page 575, states: "The

consent of a person of mature years and sane mind, on whom no fraud was practiced, would, of course, prevent an act otherwise wrongful from being kidnapping, but not so a young child."

It would seem that the better view as to the common law definition of kidnapping is that the use of physical force or violence is not always necessary to the commission of kidnapping, or certainly of child stealing, but that fraud may likewise be sufficient. *S. v. Marks*, 178 N.C. 730, 101 S.E. 24; *Gooch v. U. S.*, 82 F. 2d 534; *S. v. Brown*, 181 Kan. 375, 312 P. 2d 832; *Moody v. People*, 20 Ill. 315; *S. v. Rollins*, 8 N.H. 550; *People v. DeLeon*, 109 N.Y. 226, 16 N.E. 46, 4 Am. St. Rep. 444; 1 Am. Jur. 2d, Abduction and Kidnapping, secs. 13 and 15; 51 C.J.S., Kidnapping, sec. 1 (4) and (5). See also *S. v. Harrison*, 145 N.C. 408, 59 S.E. 867.

In the *Marks* case, this Court quoted from 24 Cyc., 798, 799, as follows:

> " 'To constitute the offense of kidnapping, it is not necessary that actual physical force should have been employed. It is essential only that the taking or detention should be against the will of the persons kidnapped. . . . In determining whether the person was coerced by fraud and inveiglement, the nature of the artifice employed and the age and education and *condition of mind* must be taken into consideration. The offense is not committed if the person taken away or detained, being capable in law of consenting, goes voluntarily without objection in the absence of fraud and deception, but a child of tender years is regarded as incapable of consenting.' 24 Cyc., 798, 799."

This quotation from Cyc. is not entirely verbatim, and omits a few words. The exact language used by Cyc. is:

> "To constitute the offense of kidnapping it is not necessary that actual physical force or violence should have been employed, and this was true even at common law. It is essential only that the taking or detention should be against the will of the person kidnapped. Falsely exciting the fears of the person who is the subject of the offense by threats, or enticement or inveiglement by false and fraudulent representations amounting substantially to a coercion of the will is sufficient. In determining whether the person was coerced by fraud and inveiglement, the nature of the artifice employed and the age, education, and condition of mind must be taken into consideration. The offense is not committed if the person taken away or detained, being capable in law of consenting, goes voluntarily without objection in the absence of fraud

and deception. But a child of tender years is regarded as incapable of consenting."

In the *Gooch* case the Court said:

"While kidnapping at common law means to forcibly abduct a person and to carry him from one state into another state, it involves the element of seizing the victim by force or fraud and against his will."

In the *Brown* case the Court stated:

"The word 'kidnap' has a technical meaning. It is derived from the common law, and must be interpreted in the light of its technical meaning in common law. Both under the common law and under a statute, unless clearly modified, it means to take and carry away any person by unlawful force or by fraud, and against his will."

In the *Moody* case the Court said:

"The statute defines kidnapping to be the forcible abduction or stealing away of a man, woman or child from his or her own country, and sending or taking him or her into another. While the letter of the statute requires the employment of force to complete this crime, it will undoubtedly be admitted by all that physical force and violence is not necessary to its completion. Such a literal construction would render this statutory provision entirely useless. The crime is more frequently committed by threats and menaces than by the employment of actual physical force and violence. If the crime may be committed without actual violence, by menaces, it would seem that any threats, fraud, or appeal to the fears of the individual, which subjects the will of the person abducted, and places such person as fully under the control of the other, as if actual force were employed, would make the offense as complete as by the use of force and violence."

In *Kent v. Commonwealth*, 165 Va. 840, 183 S.E. 177, 1936, the defendant was indicted, tried and convicted under section 4407 of the Code of Virginia, as amended by Acts 1934, Ch. 338, for the kidnapping of one Mary J. Hastings, and sentenced to imprisonment for thirteen years.

Section 4407, as amended, of the Code of Virginia, which appears in the same words in Code of Virginia, 1950, Vol. 4, Title 18, Article 3, sec. 43, p. 140, reads as follows:

"Kidnapping, or threatening or attempting to kidnap, with intent to extort money; how punished.—If any person seize, take or secrete any other person with intent to extort money, or pecuniary benefit, he shall be punished with death, or within the discretion of the jury be confined in the penitentiary not less than eight nor more than twenty years. If any person threaten, or attempt, to seize, take or secrete any other person with intent to extort money, or pecuniary benefit, he shall be punished by * * * ."

According to the opinion the evidence shows: Mrs. Hastings was pressing the defendant for the payment of money he owed her, and she was induced to accompany him to Washington on the occasion referred to upon the assurance that if she would do so he would obtain the money from a relative living there and pay her. Defendant expected to obtain the possession of Blue Ridge Springs and otherwise benefit financially if he could get Mrs. Hastings out of the way. On the night of Sunday, 24 August 1934, defendant left Blue Ridge Springs, Va., in his automobile, for Washington, D. C., taking Mrs. Hastings with him. On the morning of Wednesday, 27 August 1934, the body of Mrs. Hastings was found lying on the side of the highway near Stroudsburg, Penn. She had been shot through the head with a pistol, and had been dead several days.

Defendant's counsel contended, as here, that he cannot be convicted under the statute because the evidence fails to show that any force or restraint was used by defendant in taking Mrs. Hastings with him. Defendant's counsel further contended the evidence fails to show there was any intent on defendant's part to extort money or pecuniary benefit.

The Court in a *per curiam* opinion in affirming the judgment below said:

"After careful consideration of the record, we think the evidence shows that the accused took Mrs. Hastings with him under such circumstances as amount to fraud and coercion on his part, and for the purpose of pecuniary benefit, and the same is therefore sufficient to sustain a conviction under the statute."

It would seem from the evidence stated in the opinion, and from the contention of defendant's counsel, that there was no forcible taking, although the opinion states that: "We think the evidence shows that the accused took Mrs. Hastings with him under such circumstances as amount to fraud and coercion on his part." However that may be, it would appear that the Virginia Court considered that the false and fraudulent representations of defendant amounted sub-

stantially to a coercion of the will of Mrs. Hastings, and that the consent of Mrs. Hastings having been obtained by the fraud of defendant is, in truth, no consent at all.

From our investigation it appears that all of our states have enacted statutes in respect to the offense of kidnapping. There is such a variance in the language of these statutes, enlarging the common law concept of the crime, and especially in not making its existence dependent on any interstate, or taking out of the country, element, that it seems impossible to give a generally valid definition of kidnapping which would apply to all the states. "However, it may be said as a general proposition that * * * the gravamen of kidnapping is the taking or detention of a person against his will and without lawful authority. In other words, it is an unlawful interference with the freedom of the person kidnapped." 1 Am. Jur. 2d, Abduction and Kidnapping, sec. 2. See also *ibid,* sec. 11.

The elements of the crime of kidnapping are necessarily dependent on the wording of the statute in the particular state, and authority cited from the states must be read in connection with the statute of the particular state. *S. v. Croatt,* 227 Minn. 185, 34 N.W. 2d 716.

Under our present kidnapping statute, G.S. 14-39, a person is guilty of kidnapping (1) if he kidnaps or causes to be kidnapped any human being, or (2) if he demands a ransom of any person, firm or corporation, male or female, to be paid on account of kidnapping, or (3) if he holds any human being for ransom. There is a proviso in the statute not applicable here.

According to the authorities we have cited, the crime of kidnapping by its very nature cannot ordinarily be committed by an act to which a person, being capable in law of consenting, consents in a legally valid manner. But where false and fraudulent representations or fraud amounting substantially to a coercion of the will of the kidnapped person are used as a substitute for force in effecting kidnapping, there is, in truth and in law, no consent at all on the part of the victim. In brief, under those circumstances the law has long considered fraud and violence as the same in the kidnapping of a person.

Considering the commonly accepted meaning of the word "kidnap," and its special legal meaning, and considering the object of our statute, and the manifest meaning of the law-making body to secure the personal liberty of the citizen, and the language used in our cases above quoted, it is our opinion, and we so hold, that the word "kidnap" as used in G.S. 14-39 means the unlawful taking and carrying away of a person by force or fraud and against his will, or the unlawful seizure and detention of a person by force or fraud and against his will. The expression used in *S. v. Witherington, supra,* quoted above, may be an

*obiter dictum* as contended by defendant, but it is a correct statement of law in this jurisdiction in respect to the meaning of the word "kidnap" as used in G.S. 14-39, and this is true even though G.S. 14-39 omits the words "forcibly or fraudulently" used in C.S. 4221. To construe the word "kidnap" as used in G.S. 14-39 as applying only to a forcible taking, as contended by defendant, is too narrow a construction, and in many instances would make G.S. 14-39 practically useless.

In the present case there was no actual confinement or detention of Elaine Saunders, nor any actual force used by defendant. She consented to go with defendant in his automobile, and baby-sit, as defendant said, with his two girls because his mother had a sprained ankle and couldn't get around, and voluntarily left her home with him in his automobile for that lawful and innocent purpose. But the evidence for the State permits the legitimate inference that she did not consent to go with him in his automobile out on a dirt road in another county for some other purpose, and that she would not have gone with him at all, except for his false representations and fraud in saying that he wanted her to go and baby-sit for his two girls, which representations were untrue in fact, and defendant knew them to be untrue when he made them, that such representations were reasonably calculated to deceive Elaine Saunders taking into consideration the nature of the representations, and her age and education, that such representations were made by defendant with intent to deceive her so that he could carry her off in his automobile for some indecent or immoral purpose, and did in fact deceive her and cause her to leave with him. And further, the evidence for the State permits the reasonable inference that the false representations and fraud of defendant amounted substantially to a coercion of the will of Elaine Saunders, and that the consent of Elaine Saunders to leave her home in defendant's automobile having been obtained by the false representations and fraud of defendant was, in truth, no consent at all, and that her leaving her home with defendant was in fact against her will. The evidence for the State, considered in the light most favorable to it, *S. v. Kelly*, 243 N.C. 177, 90 S.E. 2d 241, is sufficient to carry the case to the jury on the charge in the indictment, and the trial judge was correct in denying defendant's motion for judgment of nonsuit made at the close of all the evidence.

Defendant assigns as error parts of the charge on the ground that the trial court instructed the jury that the "taking and carrying away a human being by fraud constitutes the offense of kidnapping." His argument in his brief on these assignments of error is incorporated in, and is the same as, his argument in his brief that the court erred in denying his motion for judgment of nonsuit. The parts of the charge

assailed by these assignments of error are in substantial, if not in exact, compliance with the law in respect to kidnapping effected by fraud, as we have stated it above, and are overruled.

Defendant also assigns as error that the court in its charge limited the jury to returning one of two verdicts: Guilty as charged in the indictment, or Not Guilty. Defendant contends that the court should have instructed the jury that they could return one of three verdicts: Guilty as charged in the indictment, or Guilty of an assault on a female, or Not Guilty.

There is no evidence here of threatening words or violence menaced, nor is there any overt act or an attempt, with force and violence, to do physical injury to Elaine Saunders. This Court said in *S. v. Ingram*, 237 N.C. 197, 74 S.E. 2d 532:

> "So that it seems well settled that in order to constitute the criminal offense of assault there must be an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another."

There is no evidence in the case tending to show that defendant committed an assault on Elaine Saunders, and, therefore, the court properly did not instruct the jury that they could return a verdict of Guilty of an assault on a female, but correctly instructed them that they could return one of two verdicts, as set forth above. *S. v. Jones*, 249 N.C. 134, 105 S.E. 2d 513; *S. v. Brown*, 227 N.C. 383, 42 S.E. 2d 402.

The only other assignment of error is to the judgment, which is overruled.

In the trial below we find

No error.

BOBBITT, J., concurs in result.

HIGGINS, and RODMAN, JJ., dissent.