STATE OF NORTH CAROLINA v. JAMES INGLAND

No. 83

(Filed 29 January 1971)

1. Criminal Law § 112— instruction on reasonable doubt

In the absence of a request, the trial judge is not required to define reasonable doubt.

2. Criminal Law § 126— instruction on unanimity of verdict

In the absence of a request, the trial judge is not required to charge the jury that its verdict must be unanimous.

3. Criminal Law § 168— omission in the charge — harmless error

To merit the retrial of a case, an omission in the charge must not only be erroneous but must also be material and prejudicial.

4. Kidnapping § 1— kidnapping by fraud

The unlawful taking and carrying away of a person by fraud is kidnapping. G.S. 14-39.

5. Kidnapping § 1— kidnapping by fraud — instructions

Failure of the trial judge in a kidnapping prosecution to charge on the law applicable to kidnapping effected by fraud was not prejudicial to defendant.

6. Criminal Law § 167—omissions beneficial to defendant

Omissions beneficial to a defendant afford no grounds for reversal.

7. Kidnapping § 1; Criminal Law § 168— kidnapping defined — instructions correct at one point, incorrect at another

Trial judge's "clarifying" instructions which correctly defined kidnapping as the taking and carrying away of a person by force or fraud, but which then incorrectly defined kidnapping as the seizure

and detention of a person for the purpose of carrying him away against his will, was reversible error, since the jury might have acted upon the incorrect part in reaching its verdict.

8. **Kidnapping § 1—definition of kidnapping — repudiation of earlier dicta**

The statement in previous decisions that kidnapping constitutes the seizure and detention of a human being for the purpose of carrying him away against his will is no longer authoritative.

9. **Kidnapping § 1; False Imprisonment § 1— common law crimes**

The common law with respect to kidnapping and false imprisonment is the law of this State. G.S. 4-1; G.S. 14-39.

10. **Kidnapping § 1; False Imprisonment § 1— the crimes distinguished**

The unlawful detention of a human being against his will is false imprisonment, not kidnapping; kidnapping contemplates, in addition to unlawful restraint, a carrying away of the person detained.

APPEAL from *Cowper, J.,* 10 August 1970 Special Criminal Session, CUMBERLAND Superior Court.

Defendant James Ingland, Curtis Proulx, alias Harold Jones, and Guy Webb were charged in a bill of indictment, proper in form, with the kidnapping of one Richard Fortner on 30 April 1970. This appeal involves only the trial and conviction of James Ingland. He was represented at the trial by the Public Defender.

Richard Fortner testified that he had known defendant six or seven months. On 30 April 1970 defendant invited him to a party at a house on Maiden Lane known as The Family House. He arrived there about midnight and was talking with defendant's brother, Terry Ingland, on the front porch when defendant drove up with a man named Stoner, a man named Guy Webb, and a man named Candy. They all went inside. Fortner had a knife which he was sharpening, and Stoner, on the pretense of showing him how to sharpen it, took the knife and then pointed it at Fortner. At this time the defendant laid a shotgun across his lap and said to Fortner, "You are dead." Fortner asked, "What do you want to kill me for?" Defendant replied that Fortner had been informing on him.

Defendant then said, "Let's get in the car and go for a ride"; whereupon Fortner was ushered out of the house and into a car accompanied by Stoner with the knife, defendant with his shotgun, Webb and Candy. They proceeded to a wooded

area near Seventy-First High School, got out of the car, and further discussed the matter of who was an informer. Fortner denied the accusation and defendant agreed to go find another man named Wayne Eschelman, otherwise known as Spanky. Fortner's hands were tied behind his back. Then he was "walked about fifteen or twenty yards into the woods and there laid face down on the ground and stakes were placed so that he could not move without them sticking in his throat." Stoner was left to guard Fortner, and the rest of the group left with defendant. Fortner remained in that position for four and one-half hours with Stoner guarding him. Defendant never came back, but his brother Terry Ingland, Guy Webb and Candy returned with Wayne Eschelman. Fortner was untied and questioned at length by Terry Ingland who finally told him to "start walking." He left on foot, crossed a field to a house, and telephoned the sheriff's department.

Deputy Sheriff Hodges testified that Fortner told him substantially the same story in early May and took him to the wooded area where the pointed sticks described by Fortner were discovered.

On cross-examination Fortner admitted that he had been a user of heroin for about a year and a half and had injected himself with an eight-dollar bag of heroin early on the evening in question. He admitted he was serving a sentence at the time of the trial for possession and transportation of heroin.

Defendant's evidence consisted primarily of his own testimony. He testified that The Family House where he lived had been searched by the police on several occasions, but nothing was ever seized. Recently he had been questioned about a matter known only to himself, Fortner and Eschelman, and he was anxious to find out which one had been telling lies to the authorities and causing the house to be raided. This was the reason Fortner was invited to The Family House on the night of April 30. Defendant further stated that Fortner was "barely coherent" when he arrived at The Family House but agreed to go with them to find Eschelman; that he got the shotgun when the group was getting ready to leave; that he walked out of the house first, unloaded the shotgun on the porch, and put it in the car; that they went to the home of Teresa Zahran seeking Eschelman, but he was not there; that he then drove out

State v. Ingland

Highway 401, turned left on a dirt road intending to double back the way he had come; that Fortner was speaking rapidly but incoherently and he stopped the car and asked Fortner to get out; that he talked with Fortner for about fifteen minutes and the two of them agreed that Fortner would remain there and defendant would continue to search for Wayne Eschelman; that he requested Stoner to stay with Fortner; that he then drove into town, contacted his brother Terry, and the two of them searched unsuccessfully for Wayne Eschelman; that he never returned to the area where Fortner left the car.

On cross-examination defendant denied that during the meeting with Fortner at The Family House he pulled out his shotgun, laid it across his lap, and pointed it at Fortner.

Lynda Jette, a defense witness, testified that she and her husband picked up Richard Fortner when he was hitchhiking early in May; that Fortner was somewhat incoherent in his speech, his eyelids drooped, and his movements were slow and sluggish; that Fortner stated he had taken a shot of heroin a few minutes earlier and further stated he did not want to turn in defendant and his brother Terry but had no choice.

Rex Simms testified that he shared a cell with Fortner in the Cumberland County Jail in early June while awaiting trial on a drug abuse charge; that Fortner told him that he voluntarily went on the ride with defendant and others on April 30; that they took him to a field, held him there, and that he "nodded out" from the effects of heroin; that Fortner said he "couldn't stand" defendant and his brother and that he had to testify; that Fortner said, "They gave me five years prayer for judgment, I've got to testify."

Danny Dennis, awaiting trial on a murder charge and confined to the Cumberland County Jail, testified that he overheard a conversation there in which Fortner told defendant James Ingland that he wanted to talk out a misunderstanding; that he was not coerced into leaving The Family House but went willingly and was not in fear of his life except during the time he was alone with the man named Stoner; that he just told the officers what they wanted to hear in return for a reduction of his sentence to only one year.

In rebuttal, Richard Fortner testified that he told Rex Simms he had been kidnapped and that the members of the group wanted to kill him. He denied making statements to any of the defense witnesses to the effect that he had gotten in the car at Maiden Lane voluntarily and was not in fear of his life.

The jury returned a verdict of guilty of kidnapping as charged and defendant was sentenced to a term of twelve years in the State Prison. He appealed to the Court of Appeals and the case was transferred to the Supreme Court under its general order dated July 31, 1970.

*William S. Geimer, Assistant Public Defender, Twelfth Judicial District for defendant appellant.*

*Robert Morgan, Attorney General; Claude W. Harris and Robert G. Webb, Assistant Attorneys General for the State.*

HUSKINS, Justice.

[1] Defendant assigns as error the failure of the trial judge to define reasonable doubt. In the absence of a request, such a charge is not required. *State v. Potts,* 266 N.C. 117, 145 S.E. 2d 307 (1965); *State v. Browder,* 252 N.C. 35, 112 S.E. 2d 728 (1960); *State v. Lee,* 248 N.C. 327, 103 S.E. 2d 295 (1958); *State v. Hammonds,* 241 N.C. 226, 85 S.E. 2d 133 (1954). It is the better practice, however, to do so and "seems to be well nigh the universal practice of our trial judges. . . . " *State v. Hammonds, supra.*

[2] Defendant next assigns as error the failure of the judge to charge the jury that its verdict must be unanimous. Some jurisdictions hold that a defendant is entitled to such an instruction. 53 Am. Jur., Trial § 804; *Markham v. State,* 209 Miss. 135, 46 So. 2d 88 (1950); *State v. McKinney,* 88 W. Va. 400, 106 S.E. 894 (1921).

[3] In North Carolina a defendant cannot constitutionally be convicted of any crime "but by the unanimous verdict of a jury of good and lawful persons in open court." Constitution of North Carolina, Art. I, § 13. This Court has never held, however, that failure of the trial judge to instruct the jury that its verdict must be unanimous is prejudicial error. Such a holding is unnecessary because in North Carolina a defendant has an absolute right to have the jury polled. *State v. Webb,* 265 N.C. 546, 144

State v. Ingland

S.E. 2d 619 (1965) ; *State v. Dow,* 246 N.C. 644, 99 S.E. 2d 860 (1957) ; *State v. Cephus,* 241 N.C. 562, 86 S.E. 2d 70 (1955) ; *Smith v. Paul,* 133 N.C. 66, 45 S.E. 348 (1903) ; *State v. Toole,* 106 N.C. 736, 11 S.E. 168 (1890) ; *State v. Young,* 77 N.C. 498 (1877). He can thus ascertain if there has been any misunderstanding of the requirement of unanimity by any juror. "This right is surely one of the best safeguards for the protection of the accused, and as an incident to jury trials would seem to be a constitutional right, and its exercise only a mode, more satisfactory to the prisoner, of ascertaining the *fact* that it is the verdict of the whole jury." *State v. Young, supra.* Here, the record shows that the jury was polled and all jurors assented to the verdict in open court. Defendant was assured that all jurors agreed with the verdict rendered. The omission of the charge on unanimity was entirely harmless. An omission complained of must not only be erroneous but also material and prejudicial to merit retrial of the case. Only if it is *likely that a different result would have been reached* but for the omitted instruction is a new trial required. *State v. Paige,* 272 N.C. 417, 158 S.E. 2d 522 (1968) ; *State v. Rainey,* 236 N.C. 738, 74 S.E. 2d 39 (1953).

[2] We hold that, in the absence of a request, a trial judge is not required to charge the jury that its verdict must be unanimous. Since the defendant has the right to have the jury polled, there is no apparent reason why the trial judge should be required in every case to so instruct. This assignment of error is overruled.

Defendant assigns as error the failure of the trial judge to charge on the legal principles applicable to kidnapping effected *by fraud* as well as kidnapping effected by force.

[4] The unlawful taking and carrying away of a person fraudulently is kidnapping, "and this is true even though G.S. 14-39 omits the words 'forcibly or fraudulently.' . . . To construe the word 'kidnap' as used in G.S. 14-39 as applying only to a forcible taking . . . is too narrow a construction, and in many instances would make G.S. 14-39 practically useless." *State v. Gough,* 257 N.C. 348, 126 S.E. 2d 118 (1962).

[5, 6] If it be conceded *arguendo* that the evidence in this case was sufficient to require a charge on kidnapping by fraud as well as kidnapping by force, it is not perceived how a failure to

charge on the fraudulent aspect of the matter was prejudicial to defendant. After all, kidnapping effected by fraud is still kidnapping, and failure to so charge would have been advantageous to defendant. Omissions beneficial to a defendant afford no grounds for reversal. *State v. Goldberg*, 261 N.C. 181, 134 S.E. 2d 334 (1964). This assignment has no merit.

[7]   Defendant's final assignment of error is addressed to the following portions of the charge:

> "Now, the defendant is charged with a violation of the statute making it a felony for anyone to kidnap. It shall be unlawful for any person to kidnap or cause to be kidnapped another human being. This is the statute law. . . . By kidnapping is meant the taking and carrying away of a person forcibly or fraudulently. There is no question of fraud here. . . . Force is a necessary element of the offense, to carry anyone away by unlawful force, and against his will, *to seize and detain him for the purpose of carrying away*. This is the way Webster defines kidnapping. Now, if the State has satisfied you, in this matter, from the evidence and beyond a reasonable doubt, that on the 30th day of April 1970, the defendant James Ingland in company with others, did forcibly and by using a shotgun, take and kidnap the person of Richard Michael Fortner, and transport him to a place outside of Fayetteville, in the country, unlawfully, or done without lawful authority, it would be your duty to return a verdict of guilty as charged. If the State has failed to so satisfy you, it would be your duty to return a verdict of not guilty." (Emphasis added.)

The jury retired and, after deliberating for some time, returned to the courtroom and the following colloquy occurred:

> "COURT: I understand you have a question?

> "FOREMAN: Yes sir, the question is: Would forcible detention be classified the same as an act of kidnapping?

> "COURT: Forcible detention? Yes."

The jury again retired and, after a conference between the trial judge and defense counsel, the jury was recalled by the court and the following instruction was given:

> "COURT: I want to clarify what I said to you and read this to you: By kidnapping is meant the taking and carry-

ing away of a person forcibly or fraudulently, to carry away anyone by unlawful force or fraud or against his will; *to seize and detain him for the purpose of so carrying him away.* The offense is not committed if the person, the person taken away *or detained,* is capable in law of consenting and goes voluntarily, without objection, in the absence of fraud or deception." (Emphasis added.)

Defendant assigns as error the italicized portions of the foregoing instructions. He contends the definition of kidnapping is erroneous in that the jury was told defendant would be guilty of kidnapping if he seized and detained Fortner for the purpose of carrying him away, regardless of whether there was an asportation.

G.S. 14-39 provides in pertinent part: "It shall be unlawful for any person . . . to kidnap . . . any human being. . . ." We held in *State v. Lowry,* 263 N.C. 536, 139 S.E. 2d 870 (1965), that the failure of the statute to define kidnapping did not render the statute vague or uncertain and that the common-law definition of the offense is incorporated into the statute by construction. ". . . [W]hen a statute punishes an act giving it a name known to the common law, without otherwise defining it, the statute is construed according to the common-law definition." 22 C.J.S., Criminal Law, § 21; *Johnson v. Commonwealth,* 209 Va. 291, 163 S.E. 2d 570 (1968). That decision then holds that the common-law definition of kidnapping is "the unlawful taking and carrying away of a person by force and against his will."

As stated earlier, the use of fraud instead of force to effect a kidnapping is likewise a violation of our kidnapping statute. "[W]here false and fraudulent representations or fraud amounting substantially to a coercion of the will of the kidnapped person are used as a substitute for force in effecting kidnapping, there is, in truth and in law, no consent at all on the part of the victim. In brief, under those circumstances the law has long considered fraud and violence as the same in the kidnapping of a person." *State v. Gough, supra* (257 N.C. 348, 126 S.E. 2d 118). Furthermore, threats and intimidation are equivalent to the use of actual force or violence. *State v. Bruce,* 268 N.C. 174, 150 S.E. 2d 216 (1966).

[8] The question presented here, however, has never been directly answered by this Court. Does unlawful detention with

the intent to carry away, without the asportation in fact being accomplished, constitute kidnapping? This Court has held, or quoted with approval in at least three decisions, that the word *kidnap*, as used in G.S. 14-39, means the unlawful taking and carrying away of a human being against his will by force or fraud or threats or intimidation; *or to seize and detain him for the purpose of so carrying him away. State v. Witherington*, 226 N.C. 211, 37 S.E. 2d 497 (1946) ; *State v. Dorsett*, 245 N.C. 47, 95 S.E. 2d 90 (1956) ; *State v. Gough, supra* (257 N.C. 348, 126 S.E. 2d 118). Later cases omitted the italicized portion of the definition. *State v. Lowry, supra* (263 N.C. 536, 139 S.E. 2d 870) ; *State v. Bruce, supra* (268 N.C. 174, 150 S.E. 2d 216) ; *State v. Perry*, 275 N.C. 565, 169 S.E. 2d 839 (1969) ; *State v. Woody*, 277 N.C. 646, 178 S.E. 2d 407 (1971). In every instance, however, use of the expression "or to seize and detain him for the purpose of so carrying  him away" was unnecessary to a decision of the case. The court was simply quoting Webster's definition of the word without regard to the fact that it is at variance with the common-law definition. Such dicta should no longer be regarded as authoritative.

At common law forcible detention was false imprisonment, not kidnapping. 2 Burdick, The Law of Crime (1946), § 373; Perkins on Criminal Law (1957) pp. 129, *et seq.* Modern statutes of many states, however, have varied the common-law definition of kidnapping, and some of these statutes have simply incorporated what was false imprisonment at common law into the statutory offense of kidnapping. See, for example, Alabama Code Annotated (1940), Title 14, Chapter 1, Section 6. For definitions of kidnapping which encompass a wider range of activities, see Idaho Code Annotated (1948) 18-4501; Georgia Code Annotated (1970) 26-1311; Minnesota Statutes Annotated (1964) 609-25. See generally, 1 Wharton's Criminal Law and Procedure (1957) § 371; 51 C.J.S., Kidnapping, § 1; 1 Am. Jur. 2d, Abduction and Kidnapping, § 1, *et seq.*

[9]  North Carolina has done none of these things. Since G.S. 14-39 does not define kidnapping, the General Assembly changed nothing from the common-law definition of that crime. Moreover, North Carolina does not have a criminal statute making false imprisonment a crime. G.S. 4-1 adopts the common law as the law of this State (with exceptions not pertinent here). Thus the common law with respect to kidnapping and false imprisonment is the law of this State.

---

**[10]** "False imprisonment was indictable as a specific crime at common law, and this doctrine still applies in states where the common law has been adopted." 35 C.J.S., False Imprisonment, § 71; *Commonwealth v. Brewer,* 109 Pa. Super. 429, 167 A. 386 (1933). Our decisions hold that the unlawful detention of a human being against his will is false imprisonment, not kidnapping. *State v. James,* 78 N.C. 455 (1878) ; *State v. Lunsford,* 81 N.C. 528 (1879) ; *Hales v. McCrory-McClellan Corp.,* 260 N.C. 568, 133 S.E. 2d 225 (1963) ; *Black v. Clark's Greensboro, Inc.,* 263 N.C. 226, 139 S.E. 2d 199 (1964). In *Lunsford* the Court said: "False imprisonment is the illegal restraint of the person of any one against his will. . . . But there must be a detention, and the detention must be unlawful. 3 Bl. Com., 127." Other authorities sustain this view. "Any unlawful restraint of one's liberty, whether in a common prison, in a private house, on the public streets, in a ship, or elsewhere, is in law, a false imprisonment. . . . The offense is a misdemeanor at common law." 2 Burdick, The Law of Crime (1946), § 373; 3 Bl. Comm., 127, 218. "False imprisonment is, at common law, the unlawful restraint or detention of another." Burdick, *supra,* § 377. See Clark and Marshall, A Treatise on the Law of Crimes (7th Ed., 1967), § 10.24; 1 Wharton's Criminal Law and Procedure (1957), § 385.

On the other hand, common-law kidnapping contemplates, in addition to unlawful restraint, a carrying away of the person detained. *State v. Harrison,* 145 N.C. 408, 59 S.E. 867 (1907), quotes Bishop's definition of kidnapping as "false imprisonment aggravated by conveying the imprisoned person to some other place." *See also State v. Lowry, supra.* Blackstone and the early English authorities held that a carrying away to *another country* was necessary to constitute kidnapping. The asportation requirement has now been relaxed, however, so that *any* carrying away is sufficient. The distance the victim is carried is immaterial. *State v. Lowry, supra.*

**[7]** In light of these distinctions, we hold that in order to constitute kidnapping there must be not only an unlawful detention by force or fraud but also a carrying away of the victim. While the italicized portion of the judge's initial charge was therefore erroneous, the error at that point was harmless because the mandate to the jury which immediately followed correctly stated the law and correctly applied it to the factual findings necessary to support a verdict of guilty. This clarity was destroyed, however,

by the colloquy which followed when the jury returned with its question and by the additional instructions given when the judge sent for the jury to clarify his answer. This final "clarifying" instruction was correct in part and erroneous in part. We cannot know upon which part the jury based its verdict. Did it find that Fortner was unlawfully taken and carried away by force and against his will? Or did it find that he consented to go and went voluntarily to the wooded area where he was seized and detained? The one is kidnapping; the other is not.

This uncertainty requires a new trial. "It has been uniformly held that where the court charges correctly at one point and incorrectly at another, a new trial is necessary because the jury may have acted upon the incorrect part. This is particularly true when the incorrect portion of the charge is the application of the law to the facts. (Citations omitted.) A new trial must also result when ambiguity in the charge affords an opportunity for the jury to act upon a permissible but incorrect interpretation." *State v. Parrish,* 275 N.C. 69, 165 S.E. 2d 230 (1969).

It should be said in fairness to the able trial judge that his error in the charge was induced by the language of this Court in the cases cited and discussed in this opinion.

New trial.