STATE OF NORTH CAROLINA v. WALTER ELI OWEN

No. 7429SC638

(Filed 19 February 1975)

1. **Criminal Law § 91— bill of indictment returned at same session as trial — continuance properly denied**

    The trial court did not err in denying defendant's motion for continuance where the only reason given for such motion was that the bill of indictment was returned at the same session of court at which defendant was tried and the case was not on the calendar.

2. **Kidnapping § 1— removal of victim from scene of prior crime — sufficiency of evidence of kidnapping**

    Evidence was sufficient under *S. v. Dix*, 282 N.C. 490, and *S. v. Roberts*, 286 N.C. 265, to support a verdict of guilty of kidnapping where it tended to show that defendant had completed the commission of the crime of shooting deer at night, defendant removed his victim by force to a place one half mile away, and such removal was a separate and distinct offense committed for the purpose of affording defendant safe passage out of the area and was not incidental to the first crime of shooting the deer.

3. **Criminal Law § 115— kidnapping — failure to instruct on lesser included offense proper**

    The trial court in a kidnapping prosecution did not err in failing to submit a lesser included offense to the jury.

4. **Kidnapping § 1— distance victim removed immaterial — instruction not prejudicial**

    In this prosecution for kidnapping where the distance the victim was carried was immaterial, trial court's instruction that "any carrying away is sufficient, members of the jury, that is the distance he is carried is immaterial," though disapproved in *S. v. Dix*, 282 N.C. 490, did not constitute reversible error.

APPEAL by defendant from *Friday, Judge.* Judgment entered 21 February 1974 in Superior Court, HENDERSON County. Heard in the Court of Appeals 13 January 1975.

Defendant was charged with and convicted of kidnapping. The court entered judgment sentencing defendant to serve an active sentence of not less than 12 nor more than 16 years under the supervision of the State Department of Corrections. Defendant appealed. Facts necessary for decision are set out in the opinion.

*Attorney General Rufus L. Edmisten, by Deputy Attorney General R. Bruce White, Jr., and Assistant Attorney General Zoro J. Guice, Jr., for the State.*

*Edwin R. Groce for defendant appellant.*

MORRIS, Judge.

[1]  Defendant's first assignment of error is directed to the court's refusal to grant his motion for continuance. It appears that the bill of indictment upon which defendant was tried was returned at the same session of court at which he was tried. He was represented by court-appointed counsel who was appointed some five days after the warrant was served on defendant and approximately three weeks prior to trial. Defendant was under bond to appear in court on 11 February 1974 and remain until released or discharged. On Monday, 18 February 1974, the solicitor called defendant's case for trial after the grand jury had returned a true bill. The court continued the case until later in the week for the benefit of defendant's counsel. When it was again called, counsel made an oral motion for continuance until the next session of court. He gave no reason other than that the bill of indictment had just been returned at that session and the case was not on the calendar. He did not reduce his motion to writing and give other reasons therefor. There is no showing that any witnesses for defendant would not be available who could and would be available at the next session. There is no statement by counsel that he had not had adequate time to prepare defendant's defense.

The mere fact that a true bill is returned and the case is called for trial at the same session does not entitle defendant to a continuance to the next session. *State v. Gay,* 273 N.C. 125, 159 S.E. 2d 312 (1968).

"Motions to continue are addressed to the sound discretion of the trial judge and his rulings thereon will not be upset on appeal absent a showing of such abuse of discretion as would deprive the defendants of a fair trial. (Citations omitted.)" *State v. Shue,* 16 N.C. App. 696, 193 S.E. 2d 481 (1972). Here defendant has shown no abuse of discretion.

Defendant next contends the court erred in failing to grant his motion for judgment as of nonsuit made at the close of the State's evidence and renewed at the end of all the evidence. In order to reach a conclusion as to this question, we must examine the evidence in the light of recent opinions of the Supreme Court of North Carolina. The State's evidence pertinent to the questions raised on this appeal would tend to show the following: At the time of the incident complained of, the prosecuting witness, Naman Arthur Wallin, hereinafter referred to as "Wallin",

was visiting in the home of his brother-in-law, Howard Mc-
Elreath, hereinafter referred to as "McElreath". McElreath
lived on North Mills River in Henderson County on property
owned by him adjacent to the Pisgah National Reserve. At about
1:15 a.m. on 26 December 1973, Wallin, in response to a 'call
from McElreath, went with McElreath out in his driveway,
which was about 200 yards from the house. They separated,
McElreath going "on up the main road" and Wallin remaining
in the driveway. McElreath, a special deputy sheriff, had noticed
a car go down the road and immediately come back. He had
heard a .30 caliber gun fire and immediately got up to investi-
gate. He asked Wallin to go with him, and when they got out-
side, he asked Wallin to stay at the intersection of the driveway
and the public road. In about three minutes, Wallin heard
someone coming down the road and called to McElreath. The
person who was approaching answered "Yes", and Wallin
thought it was McElreath. He looked down the road and felt
"something poke" him in the back. The defendant said "Hell, no,
this is not Howard, drop your gun and don't say a word or
I'll blow you in two", and "I have just killed deer up there in
the fields and they have got these roads sealed off and you are
my ticket out of here." Wallin further testified that he went
with defendant because he was afraid not to go because defend-
ant had told him he, defendant, would kill him, Wallin. De-
fendant had a .44 Magnum rifle. He ordered Wallin to. go up
over by a house and then "cut down in another road" which was
about 75 yards from where Wallin first encountered defendant.
Wallin's nephew lived in the house by which they went, and, as
they were going by, the nephew turned on the outside lights.
Defendant told Wallin's nephew to turn off the lights or he
would kill Wallin. The lights were turned off, and defendant
and Wallin continued walking. Defendant instructed Wallin that
they would be walking a while because they were going down
on the main highway where he would rendezvous 'with his
pick up man. Wallin's guess was that they walked a half mile.
When they got to the highway, defendant made Wallin lie down
in a gutter, and held the gun on him telling him that if he wished
to see another Christmas day, he "had better cooperate with
him and do what he said." Defendant kept Wallin in the ditch
about a half hour until he saw car lights approaching. He said
that would be his pick up man and instructed Wallin to march
on ahead of him; that he, defendant, would get in the car, drive
on and leave Wallin's gun at the little fruit stand. The car

approaching contained one Owen, and his car was followed by McElreath in his car. When Owen's car stopped, McElreath saw Wallin come over the ditch bank followed by defendant. Defendant started to Owen's car, and McElreath approached him. Defendant drew his gun on McElreath and one Renegar, the County Game Protector who had joined McElreath. Both tried to talk with defendant and at that time, Wallin took the chance to jump behind Owen's car to safety. The defendant had his gun cocked, pointing it at McElreath and Renegar as he backed down the road. He told them if they continued to follow him he would shoot them. After he had backed down the road about a quarter of a mile, two Henderson County deputies sheriff came up. As they started out of their car, defendant was distracted, stumbled, and Renegar was able to grab his gun. He, McElreath, and the two deputies disarmed defendant. One of the deputies unloaded defendant's gun. There were 12 shells in his gun and 17 shells in defendant's pocket.

Defendant contends that the evidence is insufficient under *State v. Dix,* 282 N.C. 490, 193 S.E. 2d 897 (1973), and *State v. Roberts,* 286 N.C. 265, 210 S.E. 2d 396 (1974), to support a verdict of guilty of kidnapping.

In *State v. Ingland,* 278 N.C. 42, 178 S.E. 2d 577 (1971), Justice Huskins, speaking for a unanimous Court, approved this definition of false imprisonment, a common law crime for which North Carolina has no statute:

> " 'Any unlawful restraint of one's liberty, whether in a common prison, in a private house, on the public streets, in a ship, or elsewhere, is in law, a false imprisonment. . . . The offense is a misdemeanor at common law.' (Citations omitted.)" Supra, at 51.

In distinguishing the crime of false imprisonment from the crime of kidnapping, the Court said:

> "On the other hand, common-law kidnapping contemplates, in addition to unlawful restraint, a carrying away of the person detained. *State v. Harrison,* 145 N.C. 408, 59 S.E. 867 (1907), quotes Bishop's definition of kidnapping as 'false imprisonment aggravated by conveying the imprisoned person to some other place.' See also *State v. Lowry, supra.* Blackstone and the early English authorities held that a carrying away to *another country* was necessary to constitute kidnapping. The asportation requirement has

now been relaxed, however, so that *any* carrying away is sufficient. The distance the victim is carried is immaterial. *State v. Lowry, supra.*" *State v. Ingland, supra,* at 51.

In *State v. Dix, supra,* Justice Sharp writing for the majority, disapproved the *use* of the statement in *State v. Ingland, supra,* " . . . *any* carrying away is sufficient. The distance the victim is carried is immaterial", saying that it was first used in this State as dictum in *State v. Lowry,* 263 N.C. 536, 139 S.E. 2d 870, appeal dismissed sub. non., 382 U.S. 22, 15 L.Ed. 2d 16, 86 S.Ct. 227 (1965). Justice Sharp noted that this apothegm was first laid down by the California Supreme Court in *People v. Chessman,* 38 Cal. 2d 166, 238 P. 2d 1001 (1951), and followed in *People v. Wein,* 50 Cal. 2d 383, 326 P. 2d 457, cert. den., 358 U.S. 866, 79 S.Ct. 98, 3 L.Ed. 2d 99, reh. den., 358 U.S. 896, 79 S.Ct. 153, 3 L.Ed. 2d 122 (1958), but that "18 years after the Chessman decision, when time had demonstrated, the unwisdom of the Chessman-Wein apothegm, the California Supreme Court confessed error in its previous construction of Sections 207 and 209 of the Penal Code and overruled Chessman and Wein. (Citations omitted.)"

In *Dix* the Court, in our opinion, does not by any means lay down a rule requiring lineal measurement of the distance of the asportation in order to fit a kidnapping charge to the definition. What the Court does do, we think, is to point out that the danger of the use of the *Lowry* statement adopted from *Chessman* and *Wein* is the very real possibility that many prosecutions for kidnapping may be brought for the purpose of securing much greater punishment than could be assessed for the crime which was committed to which the asportation of the victim was incident, or securing greater punishment by creating multiple offenses from a single crime even though the victim might have been removed only slightly and the risk of harm to the victim was not substantially increased over and above that necessarily present in the offense committed to which the asportation was incidental. In other words, the movement of the victim by the defendant must manifest the commission of a separate crime. In *Dix,* the Court held that the facts did not support conviction of kidnapping although they would justify the charges of and support conviction for the felony of assault with a firearm upon a law enforcement officer and the misdemeanors of false imprisonment and aiding and abetting prisoners to escape from jail.

In *State v. Roberts, supra,* Chief Justice Bobbitt wrote the opinion for the majority and followed the rationale of *Dix.* There the asportation of the victim was some 80 to 90 feet, defendant having dragged the victim, a seven year old girl, to the back door of a building, the lock to which had been forcibly broken. From the evidence, the only logical inference was that his purpose was to take her inside the building to assault her. The Supreme Court said:

> "As held in Ingland, the word KIDNAP, as used in G.S. 14-39, means the unlawful taking and carrying away of a human being against his will by force or fraud or threats or intimidation. In the present case, the questions are whether the evidence was sufficient to show (1) that defendant falsely imprisoned Kathy, and (2) that he unlawfully carried her away by force, *in such manner as to constitute the felony of kidnapping.*" (Emphasis added.)

In holding that the evidence in *Roberts* was not sufficient to establish either the false imprisonment or the carrying away element of the felony of kidnapping, the Court specifically noted that it made no attempt "to mark out the limits of what constitutes a false imprisonment or a carrying away sufficient to satisfy" the elements in the crime of kidnapping promulgated in *Ingland.* We think in a proper case, the removal of the victim only a few feet could be sufficient to constitute kidnapping under either *Dix* or *Roberts.*

[2] In the case now before us, the removal of the victim was a distance of some one half mile. The distance, however, we deem immaterial. The evidence, taken in the light most favorable to the State, tends to show that defendant had completed the commission of the crime of shooting deer at night. The removal of Wallin by force was not for the purpose of committing that crime nor was it incidental thereto. The forcible removal of Wallin was a separate and distinct offense committed for the purpose of affording defendant safe passage out of the area. He was, in his own words, using Wallin as his "ticket out of here". This was a type of holding for ransom, an element of the true and independent crime of kidnapping.

We think this case is clearly factually distinguishable from *Dix* and *Roberts.* Unquestionably the facts bring it within the requirements set out in *Dix* as being necessary to support a conviction for kidnapping.

[3]   Defendant next asserts, by his third assignment of error, that the court erred in its mandate to the jury in submitting only the issue of whether defendant was guilty or not guilty of the charge of kidnapping. We disagree. True, there could be no kidnapping without there first being a false imprisonment. Nevertheless, where as here the State's evidence is "positive as to each and every element of the crime charged and there is no conflicting evidence relating to any element of the charged crime", the court is not required to submit an issue as to defendant's guilt or innocence of a lesser included offense. *State v. Harvey,* 281 N.C. 1, 13-14, 187 S.E. 2d 706 (1972). Defendant's defense was that the one half mile trip was taken by Wallin willingly and in an effort to help defendant get out of the area without being apprehended. The evidence did not require the submission of a lesser included offense.

[4]   Defendant excepts to the court's instructing the jury that "[a]ny carrying away is sufficient, members of the jury, that is the distance he is carried is immaterial." This, of course, is the language used in *Ingland,* and, concededly, the use of this language was disapproved in *Dix.* Nevertheless, in the case now before us, the undisputed facts are such that the use of this language by the court in its charge to the jury did not constitute reversible error. We are of the opinion that this is a case in which the distance the victim was carried is immaterial.

Defendant has had a fair trial, represented both at trial and on appeal by competent counsel.

No error.

Judges BRITT and CLARK concur.