543 P.2d 806

**In the Matter of the APPEAL IN MARICOPA COUNTY JUVENILE ACTION NO. J–72472 S.**

**No. I CA–JUV 35.**

Court of Appeals of Arizona,
Division 1,
Department B.

Dec. 18, 1975.

Gary Peter Klahr, Phoenix, for appellant.

Moise Berger, Maricopa County Atty., by C. O. Lamp, Deputy County Atty., Phoenix, for appellee.

## OPINION

HAIRE, Chief Judge, Division 1.

This is an appeal pursuant to Rules 24 through 29, Rules of Procedure for the Juvenile Court, 17A A.R.S., from an order of the Juvenile Court entered on February 11, 1975, adjudicating the juvenile delinquent and committing him to the State Department of Corrections.

The basis of the adjudication of delinquency was the Court's finding that all three counts of a petition alleging criminal offenses by the juvenile were true beyond a reasonable doubt. The petition alleged, and the Court found, that the juvenile had committed two acts of kidnapping in violation of A.R.S. § 13–491 and one act of forcible rape in violation of A.R.S. § 13–611.

On this appeal appellant challenges the adjudication of delinquency on several grounds.

Appellant's main arguments concern the Court's failure to direct a verdict in his favor on the two kidnapping counts, and his contention that the evidence is insufficient to establish any of the three counts beyond a reasonable doubt. We have reviewed the entire record and conclude that there was sufficient evidence introduced to establish guilt beyond a reasonable doubt on all counts.

█ A brief summary of the evidence supporting the findings is that on November 28, 1974, two 14 year old girls, Mary and Christine, were hitchhiking on South Central Avenue in Phoenix about 10:15 p. m. A car driven by the then 16 year old male appellant, in which there was an adult male passenger, passed them and then stopped. The girls told them to keep going. Appellant then drove past the girls a second time, offered them a ride, and the girls got into appellant's car. Appellant told them he would take them home, but after the girls told him where they lived, appellant refused to take any route toward their home in spite of their repeated requests. Appellant told them that instead they were going to South Mountain Park to smoke pot. The girls did not want to go there and so advised appellant, whereupon appellant repeatedly threatened to kill both girls if they yelled or started anything. Appellant and his companion then gave the girls several marijuana "joints" and insisted that they light and smoke them, which the girls pretended to do. In spite of their protests and requests to be taken home, the appellant drove to South Mountain Park, where he merely slowed down at the gate and threw the entrance fee at the guard. After entering the park, appellant turned off the main road onto a side dirt road, where he parked. Appellant then told Mary to get out of the car, which she did, whereupon he pulled her to the rear of the car. Just then another car passed by on the main road, and appellant choked Mary to keep her from screaming. He then dragged her into some bushes and removed her pants. Mary began yelling again, and appellant then threw her to the ground and had sexual intercourse with her while choking her and holding her down. The intercourse was without her consent and against her will. While appellant was having intercourse with her, his adult companion approached and appellant asked him to hold Mary's legs down, which he did. The other man then had intercourse with her, after which appellant had intercourse for a second time. As a result of these acts, Mary had scratches and bruises on her neck, back, and legs. While the intercourse was occurring, Christine ran away and summoned the police, who apprehended appellant and his companion at the scene. Appellant admitted driving the girls to the park and attempting to have intercourse with Mary, allegedly with her consent, but denied any threats, violence, or actual intercourse. Based on the foregoing, we find that all three counts were established beyond a reasonable doubt, if the evidence was believed by the trier of fact.

Appellant contends, however, that because A.R.S. § 13–491 defines the type of kidnapping charged here as the act of a person who "Forcibly steals, takes or arrests any person in this state, and carries him . . . into another part of the same county. . . ." and because the girls admittedly initially entered the car voluntarily rather than as the result of any force, there can be no kidnapping under this statute under the facts of this case. Appellant cites no authority for this proposition except his own argument that force *must* be involved in the initial contact between the kidnapper and the victim. Under appellant's theory, once an initial consent to accompany a person for a particular purpose is established, he may detain the person consenting for whatever time or other purpose he desires. We do not believe this to be the law in Arizona or the effect of this particular statute.

While we find no Arizona authority directly construing A.R.S. § 13–491 in this connection, our Supreme Court has stated with respect to an allied kidnapping statute (A.R.S. § 13–492), which requires kidnapping with certain specific intents, that "The essence of kidnapping is not the distance the victim is transported but the unlawful compulsion against the will to go somewhere." *State v. Williams,* 111 Ariz. 222, 526 P.2d 1244 (1974). Under the latter statute the Court has affirmed convictions where a young child victim entered the defendant's car willingly and was then driven some distance and abused. *State v. Burchett,* 107 Ariz. 185, 484 P.2d 181 (1971); *State v. Wahrlich,* 105 Ariz. 102, 459 P.2d 727 (1969).

◼ Under common law and most modern statutes, kidnapping must involve a taking and carrying away of a person by force *or fraud,* against the will of the victim, and hence consent is a defense. 1 Am.Jur.2d, Abduction and Kidnapping, § 15. However, consent procured by fraud is no legal consent. *Ibid.* Furthermore, "It is not necessary that the involuntariness exist from the beginning of the trans-

action, if subsequently there is an enforced detention or restraint of liberty." *Ibid.,* citing *People v. Trawick,* 78 Cal.App.2d 604, 178 P.2d 45 (1947).

In *State v. Gough,* 257 N.C. 348, 126 S. E.2d 118 (1962), annotated at 95 A.L.R.2d 441, the Court points out:

"According to the authorities we have cited, the crime of kidnapping by its very nature cannot ordinarily be committed by an act to which a person, being capable in law of consenting, consents in a legally valid manner. But where false and fraudulent representations or fraud amounting substantially to a coercion of the will of the kidnapped person are used as a substitute for force in effecting kidnapping, there is, in truth and in law, no consent at all on the part of the victim. In brief, under those circumstances the law has long considered fraud and violence as the same in the kidnapping of a person." 126 S.E.2d at 124.

The Court there equated fraud with force as an equally condemned manner of carrying out a kidnapping, which it characterized as an unlawful interference with the freedom or personal liberty of the victim, under a statute which merely employed the word "kidnap". The Court also declared that limiting the kidnapping statute only to forcible takings, as distinguished from fraudulent ones, would be too narrow a construction and would render the statute "useless" in many cases. Appellant's contention here would put every hitchhiker indefinitely at the whim or mercy of the driver offering him a ride, merely because of his original, limited consent. This certainly could not have been the intent of the legislature in enacting § 13–491, and such a construction would not make any more sense in Arizona in 1975 than it did in North Carolina in 1962.

◼ The young victims "consented" to be given a ride to their home; instead, over their objections and pleas, and under threats of death, they were driven to a far distant place, where one of them was

raped. Even if the original "taking" was not forcible, and even if we omit consideration of a "fraudulent" initial taking, an unlawful detention ("taking") commenced when the appellant refused to carry out his promise to drive the girls home and instead proceeded further away therefrom against their wills. This constitutes kidnapping in violation of A.R.S. § 13–491.

Appellant's final contention is that the trial court erred in admitting into evidence Exhibit 2, a photograph of the alleged rape victim. The objection is that there was not sufficient foundation to show that the picture depicted the condition of the victim at or near the time of the event in question. In appellant's words:

"The State asked whether the pictures showed accurately 'the way you looked'. The problem is that the State did not ask *when* the alleged victim looked the way the pictures showed."

Appellant's contention is without support in the record. The testimony clearly establishes that the photographs in question were taken at the hospital immediately following the rape incident.

The adjudication and disposition are affirmed.

JACOBSON, P. J., and EUBANK, J., concurring.