STATE OF NORTH CAROLINA v. WARREN SANDERS

No. 7410SC777

(Filed 25 November 1974)

1. **Criminal Law § 76— admissibility of in-custody statement**
    The trial court properly admitted defendant's in-custody statement made to the arresting officer where the court found upon supporting *voir dire* evidence that the statement was freely, understandingly and voluntarily made.

2. **Criminal Law §§ 84, 169; Searches and Seizures § 1— search incident to unlawful arrest — admission of articles seized — harmless error**
    Although the record in this homicide case was insufficient to show that the arrest of defendant without a warrant was lawful and that a search of defendant at the time of the arrest was therefore lawful, the admission of a butcher knife and shotgun shells found in defendant's coat pocket during the search was harmless error where defendant admitted that he shot deceased with a shotgun but contended that he acted in self-defense.

3. **Homicide § 28— insanity — self-defense — erroneous instruction on effect — harmless error**
    In this second degree murder case, the trial court's erroneous instruction in its supplemental instructions that the burden of proving the defenses of insanity and self-defense "in mitigation of murder in the second degree so as to make it voluntary manslaughter is

on the defendant" did not constitute prejudicial error where the jury found defendant guilty of second degree murder, since it is clear that defendant failed to satisfy the jury that he was insane at the time of the crime or that he acted in self-defense.

APPEAL by defendant from *McLelland, Judge,* 3 June 1974 Session of Superior Court held in WAKE County. Heard in the Court of Appeals on 21 October 1974.

This is a criminal prosecution wherein the defendant, Warren Sanders, was charged in a bill of indictment, proper in form, with first degree murder. When the case was called for trial, the State announced that it would not prosecute the defendant for first degree murder but would proceed on the charge of murder in the second degree.

The State offered evidence tending to establish the following:

Officer W. M. Perry of the Zebulon Police Department, in response to a telephone call, went to the home of Warren Sanders on 21 December 1973. Mrs. Sanders, the wife of the defendant, met Perry at the door. She was hollering and seemed hysterical. The defendant was intoxicated and was lying on a bed in the front part of the house. Mrs. Sanders directed Perry to the kitchen, where he found a dead man, Clarence Fowler, sitting in a chair. Perry called the Wake County Sheriff's Department.

J. H. Hilliard of the Wake County Sheriff's Department arrived at the Sanders' residence about ten minutes later. When he arrived, both the defendant and Mrs. Sanders were in the front room of the house. He noticed that the defendant was intoxicated and told the defendant to have a seat. The defendant, however, followed Hilliard into the kitchen. Hilliard again asked the defendant to go into the living room and sit down. When the defendant "insisted on hanging around," Hilliard searched the defendant, finding four shotgun shells and an eight-inch butcher knife in the defendant's right coat pocket. He then put the defendant in the police car until he could finish his investigation. After completing his investigation, Hilliard went out to the police car, advised the defendant of his constitutional rights, and told the defendant that he would be charged with murder. When the coroner arrived, Hilliard took the defendant to the Wake County Jail.

The next morning the defendant was taken to the interrogation room and fully advised of his constitutional rights. He then executed a statement, by making his mark thereon, to the effect that he understood his rights, was willing to make a statement and answer questions, did not want a lawyer at that time, had not been pressured, coerced, or threatened, and knew and understood what he was doing. The defendant signed the statement after he was given an opportunity to read it and after it was read to him. The defendant then told Deputy Hilliard that Clarence Fowler had tried to make him drink some wine. Since the defendant drank whiskey and not wine, he refused and the two men got into an argument. He further told Hilliard that Fowler picked up a piece of wood from the wood box and that he [the defendant] got his shotgun from his bedroom and shot Fowler.

Deputy Hilliard further testified that the deceased had one gunshot wound in his left breast. He also stated that he found a spent twelve-gauge shotgun shell about six feet from Fowler's body and an unloaded shotgun between the mattress and springs of a bed in one of the rooms of the house.

The defendant offered evidence tending to show that he was insane at the time of the alleged crime and that he did not know the difference between right and wrong. His daughter-in-law testified that the defendant had been having hallucinations and at times thought people were "after him." From 7 July 1973 until 11 July 1973, the defendant was a voluntary mental patient at Dorothea Dix Hospital.

The State offered the rebuttal testimony of Laverne McLean, the defendant's son, who stated that his father acted "crazy" sometimes and sometimes he did not.

The defendant was found guilty of second degree murder; and from a judgment imposing a prison sentence of twenty (20) years, he appealed.

*Attorney General James H. Carson, Jr., by Assistant Attorney General Thomas B. Wood for the State.*

*Maupin, Taylor & Ellis by Thomas W. H. Alexander for defendant appellant.*

HEDRICK, Judge.

Defendant contends the court erred in denying his motion for judgment as of nonsuit. When the evidence is considered in the light most favorable to the State, it is clearly sufficient to require submission of this case to the jury.

[1] Defendant assigns as error the admission into evidence of the defendant's in-custody statement made to the arresting officer the day after the alleged crime. Before admitting the defendant's in-custody statement into evidence, the able trial judge conducted an extensive voir dire in the absence of the jury as to whether the statement was understandingly and voluntarily made. At the conclusion of the voir dire examination, the court made extensive findings of fact and concluded that the statement was "freely, understandingly and voluntarily made." There is plenary competent evidence in the record to support the facts found which, in turn, support the conclusions made. This assignment of error is overruled.

[2] Defendant further contends that the court erred in allowing Deputy Hilliard to testify over defendant's general objection that he found a butcher knife and four shotgun shells in defendant's coat pocket when he searched the defendant immediately before he put the defendant in the patrol car. If the search of defendant's person was incidental to a lawful arrest, the challenged testimony was admissible. *State v. Woody,* 277 N.C. 646, 178 S.E. 2d 407 (1971) ; *State v. Tippett,* 270 N.C. 588, 155 S.E. 2d 269 (1967). If Deputy Hilliard had reasonable grounds to believe the defendant committed a felony and that the defendant would evade arrest if not immediately taken into custody, he would have had the authority to arrest the defendant without a warrant. G.S. 15-41(2). Obviously the officer had reasonable grounds to believe that a felonious homicide had been committed in the defendant's house. Whether the evidence in this record is sufficient to show that he had reasonable grounds to believe that the defendant killed Fowler and would escape if not taken into immediate custody so as to justify a warrantless arrest is questionable. Upon this record we cannot say that the search of the defendant's person at the particular time described was *legally* justified as contended by the State. Assuming, therefore, that the court erred in allowing the officer to testify that he found a butcher knife and four shotgun shells in the defendant's coat pocket, we are of the opinion that the circumstances of this case call for an application of the rule that some federal

constitutional errors in the setting of a particular case are so unimportant and insignificant that they may be deemed harmless, not requiring the automatic reversal of the conviction. *Chapman v. California,* 386 U.S. 18 (1967) ; *State v. Brinson,* 277 N.C. 286, 177 S.E. 2d 398 (1970). The test is that "before a federal constitutional error can be held harmless, the Court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California, supra* at 24. Here, the testimony complained of could have added nothing to the State's case. The defendant's admission that he shot Fowler precludes any possibility that the error complained of might have contributed to the jury's verdict. We hold, therefore, that the error assigned was harmless beyond a reasonable doubt.

[3] Assignments of error 7, 8, and 9, based on exceptions duly noted in the record, relate to supplementary instructions given to the jury by the judge *ex mero motu* after the jury had deliberated for a "number of hours." When the charge is considered contextually as a whole, we conclude each of these assignments of error to be without merit. However, the exception challenging that portion of the supplementary instructions stating that the burden of proving the defenses of insanity and self-defense "in mitigation of murder in the second degree so as to make it voluntary manslaughter is on the defendant" merits further discussion. Clearly the challenged instruction is erroneous, for insanity and self-defense, if proven to the satisfaction of the jury, would entitle the defendant to an acquittal. *State v. Swink,* 229 N.C. 123, 47 S.E. 2d 852 (1948) ; *State v. Weaver,* 1 N.C. App. 436, 161 S.E. 2d 755 (1968). The initial instructions on insanity and self-defense were correct, and the defendant does not contend otherwise. He does contend, however, that since the erroneous instructions came near the end of the supplementary instructions, the error was prejudicial and entitled him to a new trial. Since the jury found the defendant guilty of second degree murder, it is clear the defendant failed to satisfy the jury that he was insane at the time he shot Fowler or that he acted in self-defense. Had the jury found the defendant guilty of manslaughter, as in *State v. Street,* 241 N.C. 689, 86 S.E. 2d 277 (1955), the prejudicial effect of the erroneous instruction would be apparent.

Defendant's other assignments of error are formal in nature and require no discussion. We conclude that the defendant had a fair trial free from prejudicial error.

No error.

Judges MORRIS and BALEY concur.